CASE NO. CIV-15-324-C

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA, Plaintiff,

RACHEL TUDOR, Plaintiff/Intervenor

v.

SOUTHEASTERN OKLAHOMA STATE UNIVERSITY, and
THE REGIONAL UNIVERSITY SYSTEM OF OKLAHOMA,

Defendants.

## DEFENDANTS' SECOND MOTION IN LIMINE

DIXIE L. COFFEY, OBA#11876
KINDANNE JONES, OBA#11374
JEB E. JOSEPH, OBA#19137
Assistant Attorneys General, Litigation Division
MITHUN MANSINGHANI, OBA#32453
Deputy Solicitor General
Oklahoma Attorney General's Office
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921   Facsimile: (405) 521-4518
Email: dixie.coffey@oag.ok.gov
Email: kindanne.jones@oag.ok.gov
Email: jeb.joseph@oag.ok.gov
Email: mithun.mansinghani@oag.ok.gov
*Attorneys for Defendants*
*Southeastern Oklahoma State University and*
*The Regional University System of Oklahoma*

**August 11, 2016**

## <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS** ................................................................................... i

**TABLE OF AUTHORITIES** ............................................................................ ii

**DEFENDANTS' SECOND MOTIION IN LIMINE** ...................................... 1

**ARGUMENT** ..................................................................................................... 3

**PROPOSITION I:**

    **DR. PARKER'S SUBJECTIVE OPINIONS DO NOT MEET THE
    RELIABILITY STANDARD OF RULE 702** ...................................... 4

    A.  Tenure decisions are inherently subjective and thus not subject to expert analysis
        attempting to prove they were objectively incorrect ........................................... 4

    B.  Numerous flaws in Dr. Parker's analysis make it unreliable............................. 9

**PROPOSITION II:**

    **DR. PARKER'S TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS
    NOT RELEVANT** ............................................................................. 11

**PROPOSITION III:**

    **DR. PARKER'S TESTIMONY SHOULD BE EXCLUDED BECAUSE IT
    WILL NOT ASSIST THE JURY AND IS UNFAIRLY PREJUDICAL** ........ 14

**CONCLUSION** ............................................................................................. 16

**CERTIFICATE OF SERVICE** .................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Adelman-Reyes v. Saint Xavier Univ.*,
500 F.3d 662 (7th Cir. 2007) ............................................................................ 5

*Babbar v. Ebadi*,
216 F.3d 1086 (10th Cir. 2000) ....................................................... 5, 10, 12, 13

*Blasdel v. Northwestern University*,
687 F.3d 813 (7th Cir. 2012) .................................................................... 10, 13

*Bourjaily v. United States*,
483 U.S. 171 (1987) ........................................................................................ 4

*Bryant v. Farmers Ins. Exch.*,
432 F.3d 1114 (10th Cir. 2005) ...................................................................... 14

*Bullington v. United Airlines*,
186 F.3d 1301 (10th Cir. 1999) ...................................................................... 12

*Carlile v. South Routt School Dist. RE-3J*,
739 F.2d 1496 (10th Cir. 1984) ........................................................................ 5

*Clark v. Whiting*,
607 F.2d 634 (4th Cir. 1979) ....................................................................... 5, 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ............................................................................. 4, 6, 11

*El-Ghori v. Grimes*,
23 F.Supp.2d 1259 (D. Kan. 1988) ......................................................... 5, 12, 14

*Goodship v. University of Richmond*,
860 F.Supp. 110 (E.D. Va. 1994) .............................................................. 12, 13

*Goswami v. DePaul University*,
8 F.Supp. 3d 1019 (N.D. Ill. 2014) ................................................... 5, 6, 8, 12, 13

*Gottlieb v. Tulane Univ. of Louisiana,*
809 F.2d 278 (5th Cir. 1987) ........................................................................ 5

*Graham v. Wyeth Labs,*
906 F.2d 1399 (10th Cir. 1990) .................................................................. 14

*Gupta v. Board of Regents of University of Wisconsin System,*
63 F.App'x 924 (7th Cir. 2003) ............................................................... 5, 13

*In re Paoli R.R. Yard PCB Litigation,*
35 F.3d 717 (3d Cir. 1994) .......................................................................... 9

*Jiminez v. Mary Washington College,*
57 F.3d 369 (4th Cir. 1995) ......................................................................... 5

*Kossow v. St. Thomas University, Inc.,*
42 F.Supp.2d 1312 (S.D. Fla. 1999) ......................................................... 14

*Kumho Tire Co. v. Carmichael,*
526 U.S. 137 (1999) ........................................................................... 3, 4, 8

*Kunda v. Muhlenberg College,*
621 F.2d 532 (3d Cir. 1980) ........................................................................ 5

*Leach v. Baylor College of Medicine,*
2009 WL 385450 (S.D. Tex. 2009) ............................................................. 5

*Lovelace v. Southeastern Massachusetts University,*
793 F.2d 419 (1st Cir. 1986) ....................................................................... 5

*Mayor of Philadelphia v. Educ. Equal. League,*
415 U.S. 605 (1974) ................................................................................... 10

*Martinez v. Wyoming,*
218 F.3d 1133 (10th Cir. 2000) ................................................................. 10

*McNaught v. Virginia Community College System,*
933 F.Supp.2d 804 (E.D. Va. 2013) ............................................................ 5

*Namenwirth v. Board of Regents of University of Wisconsin System,*
769 F.2d 1235 (7th Cir. 1985) .................................................................. 5, 9

*Ram v. New Mexico Dep't of Env't,*
2006 WL 4079623 (D.N.M. Dec. 15, 2006) .............................................................. 10, 15

*Simms v. Oklahoma,*
165 F.3d 1321 (10th Cir. 1999), *cert. denied,*
528 U.S. 815 ...................................................................................................................... 11

*Thrash v. Miami University,*
549 F.App'x 511 (6th Cir. 2014).............................................................................. 5, 9, 11

*United States v. Charley,*
189 F.3d 1251 (10th Cir. 1999) ........................................................................................ 4

*United States v. Rodriguez-Felix,*
450 F.3d 117 (10th Cir. 2006) ........................................................................................ 14

*Villanueva v. Wellesley Coll.,*
930 F.2d 124 (1st Cir. 1991) ........................................................................................... 11

*Wayne v. Shadowen,*
15 F.App'x 271 (6th Cir. 2001)......................................................................................... 4

*Zahorik v. Cornell Univ.,*
729 F.2d 85 (2d Cir. 1984) ........................................................................................... 5, 9

## RULES

Fed. R. Evid. 403 ............................................................................................................ 16

Fed. R. Evid. 702 ............................................................. 2, 3, 4, 5, 6, 8, 9, 11, 14, 15, 16

## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

        Plaintiff,

RACHEL TUDOR,

        Plaintiff-Intervenor,

v.                              **Case No. CIV-15-324-C**

SOUTHEASTERN OKLAHOMA STATE
UNIVERSITY, and

THE REGIONAL UNIVERSITY SYSTEM
OF OKLAHOMA,

        Defendants.

## DEFENDANTS SOUTHEASTERN OKLAHOMA STATE UNIVERSITY
## AND THE REGIONAL UNIVERSITY SYSTEM OF OKLAHOMA'S
## <u>SECOND MOTION IN LIMINE</u>

In this case alleging that Defendants denied tenure to Dr. Tudor because of her sex, Plaintiffs offer the testimony of Dr. Robert Dale Parker as a purported expert seeking to testify that Dr. Tudor merited tenure based on her teaching, scholarship, and service, and based on the granting of tenure to some of Dr. Tudor's colleagues. But such "tenure experts" (if such a thing exists), who seek to testify that a candidate's employer objectively should have hired her, have consistently been rejected by courts. The decision to grant tenure, and the myriad components involved in that decision such as the evaluation of the merits of (sometimes arcane) scholarship, is an inherently subjective inquiry. Thus, courts have uniformly rejected invitations to determine whether a university's tenure decision was objectively "wrong" or to second-guess a school's

evaluation of candidates' relative merits for tenure, and have thus also consistently excluded or disregarded testimony from experts purporting to show the same. While a court must certainly inquire as to whether the reason for tenure rejection was unlawful discrimination, that is not the subject of the expert testimony offered here.

Instead, Dr. Parker seeks to perform the role of tenure overseer, evaluating four candidates who were granted tenure and Dr. Tudor and, from his opinion on the strengths of their portfolio, deciding whether Dr. Tudor too should have been granted tenure. But Dr. Parker has no expertise in the field of granting tenure—he is just an English professor, however accomplished. In any event, Dr. Parker's report is filled primarily with subjective determinations about the inherently subjective decision of whether to grant tenure. Such testimony does not meet the rigorous standards of reliability under Rule 702 for admissible expert testimony, especially where the expert, like Dr. Parker, compares so few candidates, ignores relevant information, and does not even attempt to compare Dr. Tudor with other candidates who were also denied tenure.

Even if such testimony could be considered objectively "reliable," it is not relevant to this case. Courts have consistently rejected the argument that whether a particular candidate "deserved" tenure is relevant to whether they were invidiously discriminated against. Rather, the relevant question is whether university officials lied about their reasons for denying tenure, because their reasons were instead unlawful discrimination. Dr. Parker provides no testimony on that topic, and rightfully so, since any such testimony is also outside the parameters of appropriate expert testimony under Fed. R. Evid. 702. Finally, the simple compare and contrast between the portfolios of five

candidates done by Dr. Parker—measuring how many articles each published, or how many teaching awards they won, etc.—is a task easily performed and understood by a jury without need for an expert. Because Dr. Parker's testimony does nothing to assist the trier of fact in interpreting or understanding the objective facts, the illusion of "expertise" being brought to bear would only serve to unfairly prejudice the case.

For these reasons, Defendants Southeastern Oklahoma State University ("SEOSU") and The Regional University System of Oklahoma ("RUSO") (collectively "Southeastern") ask the Court to exclude the testimony of Dr. Parker because it is improper under Rule 702 and does not meet the applicable standard of admissibility for expert testimony.

## ARGUMENT

Rule 702, which governs the admissibility of expert testimony, provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

This Rule "establishes a standard of evidentiary reliability" that "requires a valid connection to the pertinent inquiry as a precondition to admissibility," mandating that the trial judge must evaluate the "testimony's factual basis, data, principles, methods, or their application" to "determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137,

149 (1999) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-92 (1993)). The proponent of the proffered testimony bears the burden of establishing that it meets the admissibility requirements by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

As an initial matter, Dr. Parker is not qualified to testify as an expert as to whether SEOSU incorrectly (let alone unlawfully) denied tenure to Dr. Tudor, by their own standards or by national standards. Although Dr. Parker certainly appears to be an accomplished professor in English, he does not have any credentials as an expert on tenure decision making. He may or may not have sat on some tenure review committees, but the tenure process is not his field of study, nor does he go around the country consulting on how to make tenure decisions. But even if Dr. Parker is qualified to testify as a "tenure expert," for the reasons given below, that testimony should not be permitted under Rule 702.

## I.    DR. PARKER'S SUBJECTIVE OPINIONS DO NOT MEET THE RELIABILITY STANDARD OF RULE 702.

### A.    Tenure decisions are inherently subjective and thus not subject to expert analysis attempting to prove they were objectively incorrect.

Under Rule 702, an expert's testimony must be based on "knowledge," which "connotes more than subjective belief." *Daubert*, 509 U.S. at 590.[1] But court after court has held that the topic on which Dr. Parker offers his "expert" testimony—whether Dr.

---

[1] *See also United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999) (rejecting testimony that relied on subjective views); *Wayne v. Shadowen*, 15 F. App'x 271, 285 n.24 (6th Cir. 2001) (rejecting purported expert testimony on relative quality of schools because it contained "conclusory value judgements" and "subjective philosophical judgments").

Tudor was more or less deserving of tenure than others who had received that promotion at SEOSU—is an inherently subjective inquiry.[2] Thus, "tenure decisions in an academic setting involve a combination of factors which tend to set them apart from employment decisions in general." *Carlile v. South Routt School Dist. RE–3J*, 739 F.2d 1496, 1500 (10th Cir. 1984). Not surprisingly, Dr. Parker's report is laden with subjective statements and evaluations of Dr. Tudor's and others' relative merits for tenure. Because such testimony is entirely outside any field of objective inquiry in which someone can provide "expert" testimony, and because it fails to meet the reliability standards of Rule 702, Dr. Parker's testimony should be excluded.

The Northern District of Indiana recently issued a comprehensive opinion demonstrating why purported "tenure" experts do not meet the standards of Rule 702. In *Goswami v. DePaul University*, the court addressed proffered expert testimony on a behalf of a professor who was denied tenure and who alleged the denial was because of her gender, race, color, and national origin. 8 F. Supp. 3d 1019 (N.D. Ill. 2014). In support of her claim, the professor offered the testimony of six professors (four in her

---

[2] *See, e.g.*, *Thrash v. Miami University*, 549 F. App'x 511, 2014 WL 929152, 8-9 (6th Cir. 2014); *Adelman–Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 667 (7th Cir. 2007); *Gupta v. Board of Regents of University of Wisconsin System*, 63 F. App'x 925, 928 (7th Cir. 2003); *Babbar v. Ebadi*, 216 F.3d 1086 (10th Cir. 2000) (Unpublished Table Opinion); *Jiminez v. Mary Washington College*, 57 F.3d 369 (4th Cir. 1995); *Gottlieb v. Tulane Univ. of Louisiana*, 809 F.2d 278, 283 n. 6 (5th Cir.1987); *Lovelace v. Southeastern Massachusetts University*, 793 F.2d 419, 422 (1st Cir.1986); *Namenwirth v. Board of Regents of University of Wisconsin System*, 769 F.2d 1235, 1243 (7th Cir.1985); *Zahorik v. Cornell Univ.*, 729 F.2d 85, 93 (2d Cir.1984); *Kunda v. Muhlenberg College*, 621 F.2d 532, 548 (3d Cir.1980); *Clark v. Whiting*, 607 F.2d 634, 639–40 (4th Cir.1979); *McNaught v. Virginia Community College System*, 933 F.Supp.2d 804, 823–24 (E.D.Va. 2013); *Leach v. Baylor College of Medicine*, 2009 WL 385450, 23–24 (S.D. Tex. 2009); *El-Ghori v. Grimes*, 23 F.Supp.2d 1259, 1268-1269 (D. Kan. 1998).

field) who offered their opinion that she deserved tenure, and who evaluated the merits of her scholarship, "describ[ing] her work in such undeniably subjective terms as: careful, innovative, vital, thought provoking, outstanding, [etc.]." *Id.* at 1022. In addition to evaluating the quality of her work, the plaintiff's proposed experts noted the quantity of her publications, the prestige of the publications in which her works was published, the potential impact of her work, and that, in their experience as tenure reviewers, she would have received promotion and tenure at their respective universities, especially in comparison to other candidates they have reviewed. *Id.* at 1023-29.

The court rejected this testimony as inadmissible under Rule 702, noting "the uniform line of authority explicitly holding that evaluations of scholarship are inherently subjective" and "the absence of fixed, objective criteria for tenure decisions," both of which meant that the proffered experts' testimony failed to provide evidence that the Universities' decision was objectively wrong, much less discriminatory. *Id.* at 1033-35. The court reached that conclusion after an exhaustive review of the case law, which has almost universally rejected such "tenure expert" testimony, and summed up the reasons for rejection with a simple analogy:

> Suppose Dr. Goswami submitted a manuscript to a publisher and the publisher rejected it. What she is trying to do here is akin to finding another publisher who liked the material and saying that this proves the first publisher was "wrong." The publisher may have made a poor judgment—depending on ultimate sales—but it was not "wrong." It simply would have had a different opinion of her work, in much the same way as the various professors do here. Accordingly, we must conclude that Dr. Goswami has not met her burden of demonstrating her proffered expert opinions are admissible under *Daubert* and Fed.R.Evid. 702.

*Id.* at 1039.

6

The same can be said of Dr. Parker's proposed expert report in this case. Dr. Parker claims to rank five SEOSU professors based on how much they deserved tenure according to his evaluation of their teaching, scholarship, and service, but each of those evaluations—and the ranking as a whole—cannot be described as anything but subjective. For example, on teaching, he gives Dr. Tudor high (but unquantified) marks for teaching because of her "impressively written" descriptions of the courses she taught that show "admirable adaptability" and "reveal a carefully reasoned teaching imagination." *See Parker's Expert Report,* attached as Exhibit 1, at 6. He also comments on her "extraordinary syllabi," which is "among the best I have ever seen," though he notes that "the font of the syllabi is too small." *Id.* at 7. Meanwhile, he criticizes another professor who was given tenure, Dr. Spencer, opining that his teaching was not as good as Tudor's because his written course descriptions "do not show the depth of thought and imagination visible in Tudor's descriptions," and, from Spencer's syllabi, it appears "he may assign too much reading" and allot too much class time for "student presentations." *Id.* at 7-8.

Dr. Parker's evaluation of scholarship is, if possible, even more subjective. Although he attempts to inject some illusory objectivity into the analysis—the length of publication and the selectivity of periodicals in which scholarship is published—it is obvious that tenure decisions are not primarily made by stacking up the publications of candidates and seeing which one is taller. Dr. Parker admits that "actually reading [the candidate's] publications" is "the more responsible path." *Id.* at 19. Thus, Dr. Parker's analysis focuses on his subjective evaluation of each candidate's work. But while he

claims to specialize in some of the same fields as Dr. Tudor, he admits that he is not a specialist in many of the genres of the other professors he is evaluating—such as Dr. Cotter Lynch's work in early medieval women's writings—and therefore it cannot be said he gives a reliable opinion as to the quality of their works (or the works' comparative quality in relation to Dr. Tudor's works). *See id.* at 13. Despite his admitted short-comings, Dr. Parker provides subjective evaluations of the candidate's work, describing Tudor's publications as "sophisticated and well-informed," "genuinely critical yet still sympathetic," and "knowledgeable, intelligent, and wise," while claiming that one of Dr. Barker's articles was "slow-moving and too long." *Id.* at 14, 19, 22. As the *Goswami* decision and the myriad cases it cites makes clear, such subjective opinions are not reliable evidence of an erroneous tenure decision—much less sex discrimination—that is admissible under Rule 702.

The lack of reliability is made more certain by applying any of the factors used in a *Daubert*/*Kumho* analysis. Dr. Parker's rank-ordering system does not employ an objective methodology (1) that has been subjected to peer review; (2) that has a known or potential rate of error or has objective standards controlling the technique's operation; (3) or that has been generally accepted by the tenure-review community. *Kumho*, 526 U.S. at 145. Nor does Dr. Parker, who is a professor of English and not part of any field that studies tenure practices, (5) "testify about matters growing naturally and directly out of research [he has] conducted independent of litigation, [rather than] hav[ing] developed [his] opinions expressly for the purpose of testifying," nor has he (6) "accounted for obvious alternative explanations"; or demonstrated that (7) his ranking system is "known

8

to reach reliable results for the type of opinion the expert would give." Fed. R. Evid. 702, Advisory Committee Notes.

"[T]here is no common unit of measure by which to judge scholarship." *Zahorik v. Cornell Univ.,* 729 F.2d 85, 93 (2d Cir.1984). "[T]enure decisions have always relied primarily on judgments about academic potential, and there is no algorithm for producing these judgments." *Namenwirth*, 769 F.2d at 1242-43. "A teacher's competence and qualifications for tenure … do not lend themselves to precise qualifications and are not susceptible to mechanical measurement." *Clark v. Whiting*, 607 F.2d 634, 639-640 (4th Cir. 1979). For this reason, courts have repeatedly stated that "it is not the function of the courts to sit as 'super-tenure' committees," nor is it a plausible role for Dr. Parker. *Thrash*, 549 F. App'x at 521. Given the inherently subjective nature of tenure decisions, Dr. Parker's proffered expert opinion on the matter is fundamentally unreliable. Rather, it will only serve to confuse and unduly prejudice the jury by putting a veneer of objectivity on an inherently subjective topic.

**B.    Numerous flaws in Dr. Parker's analysis make it unreliable.**

Even assuming such subjective testimony could be countenanced under Rule 702, other factors demonstrate Dr. Parker's lack of reliability. Under Rule 702 "any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 745 (3d Cir. 1994).

First, Dr. Parker attempts to prove that Dr. Tudor is deserving of tenure based on the granting of tenure to four other peers.  But such a small sampling cannot be the basis of a meaningful comparison, especially in a process that involves so many subjective

variables as tenure selection. In cases involving comparisons of similarly situated individuals, sample sizes that are too small render the expert testimony unreliable. *See, e.g.*, *Ram v. New Mexico Dep't of Env't*, No. CIV 05-1083, 2006 WL 4079623, at *8, *13-14 (D.N.M. Dec. 15, 2006) (citing *Mayor of Philadelphia v. Educ. Equal. League*, 415 U.S. 605, 621 (1974); *Martinez v. Wyoming*, 218 F.3d 1133, 1138-39 (10th Cir.2000)); *see also Blasdel v. Northwestern University*, 687 F.3d 813, 817 (7th Cir. 2012)("[B]ecause so many factors influence the tenure process and because statistical inferences of discrimination are difficult to draw when there is only a small number of observations . . ., it can be difficult to infer the presence of an invidious influence such as the sex of the candidate merely by comparing successful and unsuccessful tenure applicants.").

Second, Dr. Parker deliberately excludes certain important features of a theoretically robust analysis. For example, he does no analysis of those professors who were denied tenure (aside from Tudor), which might show that others with Tudor's qualifications—or better qualifications—were also denied tenure. Similarly, Dr. Parker excludes from his consideration any scholarship performed by a candidate before arriving at the University as irrelevant to a tenure committee's evaluation of a candidate's ability as a scholar, Ex. 1 at 10, but he offers no evidence to show that this is the practice at Southeastern in particular, or even at most universities in general. Indeed, it would appear arbitrary for an institution to grant tenure to a candidate who has spent all of her profession at the university over another candidate who has made far greater contributions to their field but happened to be hired by the university at a later date.

10

Third, the lack of inclusion of potentially relevant considerations is not surprising because Dr. Parker has no personal knowledge regarding the tenure process and the deliberations at Southeastern. The sparse details provided in the Academic Policies and Procedures Manual cannot capture all the nuances in SEOSU's particular process and practice. Thus, Parker's attempt to craft a methodology regarding tenure qualifications is unreliable because of its entirely speculative nature. *Daubert*, 509 U.S. at 590.

For all these reasons, this Court should exclude Dr. Parker's testimony as unreliable and unable to meet Plaintiff's burden under Rule 702.

## II.  DR. PARKER'S TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS NOT RELEVANT.

The reason most often given by courts rejecting "tenure expert" testimony time and time again is that it is simply not relevant to a discrimination case. As the Tenth Circuit has firmly established, courts "do not sit as 'super-personnel departments' free to second guess the business judgment of an employer." *Simms v. Oklahoma*, 165 F.3d 1321, 1330 (10th Cir. 1999), *cert. denied*, 528 U.S. 815; *see also Thrash*, 549 F. App'x at 521 ("[I]t is not the function of the courts to sit as 'super-tenure' committees" (quoting *Villanueva v. Wellesley Coll.*, 930 F.2d 124, 129 (1st Cir. 1991)). This is especially true in this context because "[f]ederal courts are not particularly well-suited to the task of evaluating the criteria for successful tenured professors and are particularly ill-suited to determine the best candidates." *Babbar*, 216 F.3d at 1086.

If courts are not to evaluate whether the reasons for denying tenure were incorrect, it follows that expert testimony on that topic is not relevant. Rather, the relevant inquiry

is whether Southeastern "honestly believed those reasons and acted in good faith on that belief." *Bullington v. United Airlines,* 186 F.3d 1301, 1318 (10th Cir. 1999). In other words, "[t]he pretext inquiry focuses on whether the stated reason for the adverse employment action is in fact the reason for it–not on whether the stated reason is accurate or fair or even rational. It is not the court's concern that an employer may be wrong about its employee's performance. . . . Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Goswami*, 8 F. Supp. 3d at 1031 (citations omitted).

Dr. Parker offers no relevant testimony on this score. Rather, he proffers expert testimony purportedly showing that the university's decision is incorrect, which, even if using the university's own standards, is a task courts will not countenance and is irrelevant to a discrimination claim. At bottom, Dr. Parker's proffered testimony simply seeks to express his own disagreement with the university officials' evaluation of Dr. Tudor's merits. But "plaintiff's own perceptions (or the perceptions of his expert) with respect to his qualifications for tenure are irrelevant; it is the perception of the decision maker which is relevant." *Ebadi*, 36 F.Supp.2d at 1279.[3]

---

[3] *See also id.* ("At the very most, plaintiff's evidence supports an inference that defendant may have misjudged plaintiff's qualifications for tenure. Even if defendant erred in assessing plaintiff's application for tenure, such an error is insufficient to support a showing of pretext."); *Grimes*, 23 F.Supp.2d at 1268-1269 ("As far as his research accomplishments are concerned, plaintiff ... cites the opinion of his expert, Dr. Nelson, to support his position Clearly, some academicians viewed the plaintiff's research as significant. Others did not share that view … The point here is not to determine which view is better."); *Goodship v. University of Richmond*, 860 F.Supp. 1110, 1112 (E.D. Va. 1994) ("Goodship attempts to show that the University's reason is pretextual by offering her own assessment that her research was satisfactory and the assessment of a purported

This is also the case because, as Judge Posner explains, the merits of a candidate may not be the only factor in making a tenure decision, and other factors—however inappropriate in a professional context—do not amount to discrimination:

> [O]ffice politics frequently plays a role in the award or denial of tenure; friendships and enmities, envy and rivalry. . . can figure in tenure recommendations by the candidate's colleagues, along with disagreements on what are the most promising areas of research. In addition, many academics are hypersensitive to criticism, especially by younger academics, whom they suspect, often rightly, of wanting to supplant them. Although office politics and professional jealousy are bad reasons for denying tenure, an erroneous denial of tenure, as such, does not violate Title VII.
>
> The decision making process in an academic hierarchy creates further complication. Granting tenure, like appointing a federal judge, is a big commitment. The final decision may be made by a committee, or an official such as a university provost or president, remote from the chairman and the other members of a candidate's department. Even if invidious considerations play a role in the department's recommendation for or against tenure, they may play no role in the actual tenure decision, made at a higher level.

*Blasdel*, 687 F.3d at 815-17.

For all these reasons, courts have consistently rejected or disregarded testimony as to whether a candidate deserved tenure, even in comparison to colleagues, because it is irrelevant to the determination of whether the reasons for denial of tenure are pretextual and instead the result of prohibited discrimination. *See, e.g.*, *Babbar v. Ebadi*, 36 F.Supp.2d 1269, 1279 (D.Kan.1998), *aff'd* 216 F.3d 1086 (10th Cir. 2000); *Gupta*, 63 F. App'x at 928; *Goswami*, 8 F. Supp. 3d at 1035; *Goodship*, 860 F.Supp. at 1112-13;

---

expert, not affiliated with the University, that her research is generally acceptable and certainly not deficient … The opinions of Goodship and her expert … have no bearing on whether the different opinions expressed by numerous University faculty members were not genuine.").

*Kossow v. St. Thomas University, Inc.*, 42 F.Supp.2d 1312, 1317 (S.D. Fla. 1999); *El-Ghori v. Grimes*, 23 F.Supp.2d 1259, 1268-69 (D. Kan. 1998). This Court should do the same.

## III.   DR. PARKER'S TESTIMONY SHOULD BE EXCLUDED BECAUSE IT WILL NOT ASSIST THE JURY AND IS UNFAIRLY PREJUDICIAL.

Finally, to the extent that Dr. Parker's testimony relies on objective similarities and differences between Tudor and other professors granted tenure—like number of works published or number of teaching awards received—such testimony is not the proper subject of expert testimony under Rule 702 because the ease with which a lay person can observe and understand that information means that it will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony will not be admitted when it sets forth facts within "the juror's common knowledge and experience." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006). Rather, an expert must rely on specialized knowledge and objective facts to "aid the trier of fact in his search for truth." *Graham v. Wyeth Labs.,* 906 F.2d 1399, 1408 (10th Cir.1990).

Under this standard, Dr. Parker's proffered expert testimony is inappropriate under Rule 702. Counting and comparing the number of published articles and teaching award nominations, or parroting the tenure criteria from the Academic Policies and Procedures Manual, is "well within the ability of anyone with a grade-school education [and] is, in our opinion, more aptly characterized as a lay opinion," not an expert opinion. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005). Dr. Parker himself admits at

the end of his report that, after observing all the information he has compiled, "the facts speak for themselves." Ex. 1 at 26. If that is true, then Dr. Parker's additional voice is wholly unnecessary.

The District of New Mexico rejected similar proffered expert testimony for these very reasons. In *Ram v. New Mexico Dept. of Environment*, No. CIV 05-1083, 2006 WL 4079623 (D.N.M. 2006), the plaintiffs argued that they were discriminated against on the basis of their Indian national origin. *Id.* at *1. To support these allegations, plaintiffs submitted a statistician as an expert to analyze salary comparisons between the plaintiffs and fifty-two of their similarly situated peers. *Id.* The court found this proffered expert testimony improper under Rule 702 as both unhelpful and overly prejudicial. *Id.* at *17. According to the court, the proffered comparison of salaries of fifty-two employees was not the type of expert testimony that helps a jury understand the facts of the case because "the magnitude of the relevant data in this case was [not] so large that a jury could not fairly analyze it without expert assistance or that the tabular and graphic representations of the data are so sophisticated that they required expert preparation." *Id.* at *18. Like Dr. Parker in this case, the expert in *Ram*, "[w]hile hired as an expert with impressive credentials, began to function as a paralegal, preparing descriptions or summaries of what is in the documents." *Id.* More importantly, "expert endorsement of those tables and graphs may endow the evidence with a weight it does not deserve and which may exacerbate its tendency to mislead and amplify its prejudicial impact," which is especially true because, as here, the testimony of the expert in *Ram* was "unreliable, and therefore the evidence's overall probative value is diluted." *Id.*

15

In the same way that the proffered testimony in *Ram* was improper, the testimony proffered by Plaintiff here fails to qualify as appropriate expert testimony. The proffered expert is certainly well-educated and has impressive credentials as an academic, but it is clear his expertise is not being utilized here for any *objective* analysis. Similar to the comparisons of salaries in *Ram*, the comparisons of portfolios here is not a proper form of expert testimony. Further, the proffered testimony is not the type that a jury needs help to understand; the data is far from sophisticated, and the sample size is five employees compared to fifty-two employees in *Ram*. For these reasons, Dr. Parker's objective testimony will not aid the trier of fact, as required by Rule 702, but will instead serve to unduly prejudice the jury, as prohibited by Rule 403.

## CONCLUSION

For the foregoing reasons, Defendants SEOSU and RUSO respectfully request that this Honorable Court bar the reports, testimony, and opinions of Plaintiff's proffered tenure expert, Dr. Parker, and grant any other relief this Court deems just and proper.

16

Respectfully submitted,

/s/ Mithun Mansinghani
**DIXIE L. COFFEY, OBA #11876**
**KINDANNE JONES, OBA #11374**
**JEB E. JOSEPH, OBA #19137**
*Assistant Attorneys General, Litigation Division*
**MITHUN MANSINGHANI, OBA #32453**
*Deputy Solicitor General*
OKLAHOMA ATTORNEY GENERAL'S OFFICE
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:     405.521.3921
Facsimile:      405.521.4518
Email:          dixie.coffey@oag.ok.gov
                kindanne.jones@oag.ok.gov
                jeb.joseph@oag.ok.gov
                mithun.mansinghani@oag.ok.gov
*Attorneys for Defendants*

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of August 2016, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Delora Kennebrew
Meredith Burrell
Valerie Meyer
Shayna Bloom
US DEPT. OF JUSTICE CIVIL RIGHTS DIVISION-DC
950 Pennsylvania Avenue NW Rm 49258 PHB
Washington, DC 20530
Email: delora.kennebrew@usdoj.gov
            meredith.burrell@usdoj.gov
            valerie.meyer@usdoj.gov
            shayna.bloom@usdoj.gov
*Attorneys for United States of America*

Brittany Novotny
NATIONAL LITIGATION LAW GROUP, PLLC
42 Shepherd Center
2401 NW 23rd Street
Oklahoma City, OK 73107
Email: bnovotny@nationlit.com
*Attorney for Intervenor Plaintiff*

Jillian Weiss
Ezra Young
LAW OFFICE OF JILLIAN T. WEISS, P.C.
PO Box 642
Tuxedo Park, NY 10987
Email: jtweiss@jtweisslaw.com
Email: eyoung@jtweisslaw.com
*Attorney for Intervenor Plaintiff*

Allan K. Townsend
c/o Kay Sewell, Assistant U.S. Attorney
U.S. Attorney's Office for the
        Western District of Oklahoma
210 W. Park Ave., Ste. 400
Oklahoma City, OK 73102
Email: allan.townsend@usdoj.gov
*Attorney for United States of America*

/s/ Mithun Mansinghani
Mithun Mansinghani

18