IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DR. RACHEL TUDOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-324-C |
| | ) |
| SOUTHEASTERN OKLAHOMA | ) |
| STATE UNIVERSITY and | ) |
| THE REGIONAL UNIVERSITY | ) |
| SYSTEM OF OKLAHOMA, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff[1] was employed as a professor at Southeastern Oklahoma State University. She advised Defendants that she was transitioning from a male to a female. Plaintiff alleges that following this announcement she began suffering significant discrimination and harassment. The alleged discrimination culminated in denial of her application for tenure and dismissal from the University. Defendants have filed a Motion for Summary Judgment arguing the undisputed material facts and law entitle them to judgment on each of Plaintiff's claims. Plaintiff objects to Defendants' Motion and argues there are questions of material fact remaining in this matter.

### STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

---

[1] Although Plaintiff is an Intervenor, the original Plaintiff has been dismissed. For simplicity, in this Order Ms. Tudor will be referred to as Plaintiff.

matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

1.  **Hostile Environment**

Defendants first challenge Plaintiff's ability to establish a prima facie case of hostile environment. According to Defendants, when examining Plaintiff's evidence there are an insufficient number of instances where she faced any actions which could be construed as

hostile. Thus, Defendants argue, Plaintiff has failed to demonstrate a work environment permeated with intimidation and ridicule. See Morris v. City of Colo. Springs, 666 F.3d 654, 656-69 (10th Cir. 2012) (gathering cases which hold that isolated incidents or sporadic offensive behavior as opposed to a steady barrage of opprobrious harassment, is not enough to make out a hostile work environment claim, unless those few events amount to such extreme behavior as physical or sexual assault). In response, Plaintiff argues that she suffered more than a handful of sporadic insults, incidents, or comments. Rather, she argues that every day over the course of a four-year period she had restrictions on which restrooms she could use, restrictions on how she could dress, what makeup she could wear. She also was subjected to hostilities from administrators targeting her gender, such as using an improper pronoun to refer to her and other gender-based hostilities.[2] Although Plaintiff's proof is not well organized or her facts well presented, she has offered sufficient evidence from which a reasonable jury could find that her work place was filled with a sufficient amount of offensive or insulting conduct that it was sufficiently severe or pervasive. See Lounds v. Lincare, Inc., 812 F.3d 1208, 1228 (10th Cir. 2015).

Defendants next argue that even if the Court finds a hostile environment existed, Plaintiff's claims should fail as she failed to take advantage of the preventive and corrective opportunities that were available to her. See Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 2283 (1998), and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.

---

[2] Plaintiff also argues about the benefits permitted under her health plan. However, as Defendants note, Plaintiff has not exhausted her administrative remedies regarding these issues and therefore that portion of her claim will not be considered.

Ct. 2257, 2270 (1998). Defendants argue that while employed at Southeastern Oklahoma State University ("SEOSU") Plaintiff never submitted a complaint or grievance regarding the allegedly harassing events. Plaintiff argues Defendants have failed to demonstrate that the policies in existence at the time she suffered harassment were sufficient or could redress the hostilities she alleged. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 72-73 (1986), and Debord v. Mercy Health Sys. of Kan., Inc., 737 F.3d 642, 653 (10th Cir. 2013). According to Plaintiff, at the time of her employment, Defendants did not have any policy addressing transgender discrimination or the type of hostility that she endured as a result of her status as a transgender person. Indeed, the evidence provided by Plaintiff demonstrates that, at the time Plaintiff was subjected to the alleged harassment, the policies in existence at SEOSU did not address transgender persons. Whether or not Plaintiff should have understood that the sexual harassment or sex discrimination policies could have reached her claims and therefore should have been required to file a report is immaterial, as the cases cited by Plaintiff require a more specific policy before a defendant is entitled to the Faragher/Ellerth defense.

### 2. Discrimination

Defendants next challenge Plaintiff's ability to establish a Title VII claim of discrimination. According to Defendants, Plaintiff is not subject to protection under Title VII because her status as a transgender person is not a protected class, relying on Etsitty v. Utah Transit Auth., 502 F.3d 1215, 1215, 1220 (10th Cir. 2017). The Court has previously resolved Defendants' arguments related to the Etsitty case, see Dkt. No. 34. Defendants offer nothing in the present Motion to warrant changing that determination.

4

Defendants next argue that Plaintiff fails to demonstrate that she was treated less favorably than similarly situated employees outside of her protected class, again relying on Plaintiff's status as a transgender person, that is, that she was neither male nor female. Defendants offer no legal authority to support their claim other than the apparent further reliance on the Etsitty case. Accordingly, this argument, too, is foreclosed by the Court's prior decision.

Defendants argue that Plaintiff fails to meet a prima facie case because she cannot demonstrate the job was filled by someone outside the protected class. Defendants misstate the applicable law. The Supreme Court has specifically held that age-discrimination plaintiffs need not show disparate treatment as compared to co-workers outside the protected class. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311-12 (1996). Although O'Connor dealt with age discrimination, in Perry v. Woodward, 199 F.3d 1126, 1135-40 (10th Cir. 1999), the Tenth Circuit extended the same basic point to other forms of alleged discrimination. Plaintiff has established a prima facie case.

Defendants argue that even if Plaintiff meets her prima facie case, her claims still fail, as she cannot overcome the legitimate non-discriminatory reason they have offered for her termination; that is, Plaintiff cannot demonstrate pretext. Defendants argue that their decision to deny Plaintiff tenure was a subjective matter based upon decisions made at the administrative level and that the Court should grant deference to the administration's decisions on this issue. As Defendants note, it is not necessary that the reasons for their decision were correct, only that they believed them to be correct. Tran v. Trustees of State Colls. in Colo., 355 F.3d 1263, 1268–69 (10th Cir. 2004). In response, Plaintiff argues that

5

she can demonstrate pretext because she has offered evidence which suggests substantial procedural irregularities in the decision to deny her tenure. For example, she notes one of the decisionmakers on her tenure initially refused to give her any reason for the denial. Later, that same person planted a backdated letter in her portfolio spelling out some rationales for the denial. A second decisionmaker, McMillan, refused to provide his reasons for denial and persisted even after the faculty advisor committee ordered him to disclose them. Finally, after the president's denial he directed McMillan to write the letter giving the president's reason for the denial of tenure. Plaintiff argues that each of these actions demonstrate some weakness or implausibility in Defendants' assertion that her tenure submission was clearly insufficient. Plaintiff further directs the Court to Dr. Parker's expert report demonstrating in some detail that Defendants' evaluations of Plaintiff's scholarship and service did not match the articulated criteria for tenure and promotion evaluation.

After consideration, the Court finds that Plaintiff has offered at least some evidence demonstrating that Defendants' reasons for denying her tenure were pretextual. That is, Plaintiff's evidence demonstrates some weakness, implausibility, inconsistency, or incoherencies in Defendants' proffered reason. Jones v. Barnhart, 349 F.3d 1260, 1266 (10th Cir. 2003).

### 3. Retaliation

Finally, Defendants argue that Plaintiff cannot go forward with her retaliation claim, as she cannot establish a prima facie case. Defendants again revisit their argument that Plaintiff is not entitled to protected status. That argument warrants no further discussion.

Defendants next argue that Plaintiff only made one factual allegation in her Complaint in support of her retaliation claim, namely, that she was denied the opportunity to reapply for tenure during the 2010-11 academic year. Defendants argue that any repeated application would have been contrary to administrative practice, as any portfolio not withdrawn prior to denial by the president was never considered for reapplication. In response, Plaintiff notes that she engaged in additional protected activities. For example, she filed an internal grievance and sent a letter to the U.S. Department of Education, complaining of discrimination hostilities she suffered during the 2009-10 tenure cycle. The Court finds that Plaintiff has come forward with sufficient facts from which a reasonable jury could find she was subject to retaliation by Defendants.

## CONCLUSION

For the reasons set forth herein, Defendants' Motion for Summary Judgment (Dkt. No. 177) is DENIED.

IT IS SO ORDERED this 26th day of October, 2017.

ROBIN J. CAUTHRON
United States District Judge