Case 5:15-cv-00324-C   Document 269   Filed 12/20/17   Page 1 of 52

1

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1              UNITED STATES DISTRICT COURT

2             WESTERN DISTRICT OF OKLAHOMA

3

4
DR. RACHEL TUDOR,                    )
5                                    )
        Plaintiff,                   )
6                                    )
              vs.                    )  Case No. CIV–15–324–C
7                                    )
SOUTHEASTERN OKLAHOMA STATE          )
8   UNIVERSITY and THE REGIONAL      )
    UNIVERSITY SYSTEM OF             )
9   OKLAHOMA,                        )
                                     )
10       Defendants.                 )
                                     )
11

12

13

14              TRANSCRIPT OF VOIR DIRE

15        BEFORE THE HONORABLE ROBIN J. CAUTHRON

16        WEDNESDAY, NOVEMBER 8, 2017; 9:30 a.m.

17              OKLAHOMA CITY, OKLAHOMA

18

19

20

21

22

23

24       Proceedings recorded by mechanical stenography,
    transcript produced by computer.
25

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

```
 1                    A P P E A R A N C E S

 2


 3    For the Plaintiff:

 4         Ezra I. Young
           Law Office of Ezra Young
 5         30 Devoe 1A
           Brooklyn, New York 11211
 6         ezraiyoung@gmail.com

 7         Brittany M. Novotny
           401 North Hudson Avenue
 8         Oklahoma City, Oklahoma 73102
           brittany.novotny@gmail.com

 9


10         Marie E. Galindo
           1500 Broadway
11         Suite 1120
           Wellsfargo Building
12         Lubbock, Texas 79401
           megalindo@thegalindolawfirm.com

13

14    For the Defendants:

15         Dixie L. Coffey
           Jeb E. Joseph
16         Attorney General's Office
           313 NE 21st Street
17         Oklahoma City, Oklahoma 73105
           dixie.coffey@oag.ok.gov
18         jeb.joseph@oag.ok.gov

19         Timothy M. Bunson
           1215 Classen Drive
20         Oklahoma City, OK 73103
           tim.bunson@oag.ok.gov

21

22

23

24

25
```

Case 5:15-cv-00324-C   Document 269   Filed 12/20/17   Page 3 of 52

3

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1     (Proceedings had on November 8, 2017.)

2        THE COURT:  While we're waiting for the jury, I will

3  announce this case.

4     This is Dr. Rachel Tudor vs. Southeastern Oklahoma State

5  University and others.

6     Counsel, please make your appearances.

7        MR. YOUNG:  Your Honor, my name is Ezra Young

8  appearing for Plaintiff Rachel Tudor.

9     I'm here today with co-counsel Marie Galindo and Brittany

10  Novotny.  Also at plaintiff's table is Dr. Rachel Tudor.

11     Thank you, Your Honor.

12        THE COURT:  For defendants?

13        MS. COFFEY:  Your Honor, Dixie Coffey on behalf of

14  Southeastern Oklahoma State University and the Regional

15  University System of Oklahoma.

16     I'm here with my co-counsel Tim Bunson, Jeb Joseph; our

17  paralegal, Lori Cornell; and our client, President Sean

18  Burrage.

19        THE COURT:  All right.  The jury is on its way.  We

20  will be at ease until they get here.

21     (Prospective jurors enter courtroom.)

22        THE COURT:  Good morning, ladies and gentlemen.  I

23  welcome you to service as jurors in the federal court.

24     I know that you've been qualified this morning and know

25  everything there is to know about jury service in federal

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

```
 1   court.
 2        You-all understand that the process we're about to
 3   undergo called voir dire is very important to this trial and
 4   any trial because all parties to any litigation are entitled
 5   to a jury made up of people who are fair and impartial and not
 6   inclined to vote one way or another without regard to the
 7   evidence.
 8        Because this is such an important part of the trial, I'm
 9   going to ask you to stand, raise your right hands, and be
10   sworn to answer truthfully.
11        (Prospective jurors duly sworn.)
12            THE COURT:  I'm going -- well, let me announce that
13   this case is Dr. Rachel Tudor, plaintiff, vs. Southeastern
14   Oklahoma State University and the Regional University Systems
15   of Oklahoma.
16        I'm going to read you a very short statement of what this
17   case is about.  This is not evidence.  It's just a very broad
18   description of the case.
19        Plaintiff in this case was employed by defendant
20   Southeastern Oklahoma State University as an assistant
21   professor.
22        During her employment, plaintiff transitioned from male
23   to female.  According to plaintiff, she was then subject to a
24   hostile work environment, discrimination, and retaliation
25   because of her gender.  Defendants deny the plaintiff's claim.
```

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1   Very broad statement of the case, intended to help you

2   understand the reasons for my questions.

3   I will introduce counsel to you once we have a panel

4   seated.  I'm going to ask the clerk to call 14 names.  When

5   your name is called, please have a seat in the jury box at the

6   direction of the bailiff.

7   THE CLERK:  Marsha Taylor.  Joyce Roth.  Raymond

8   Payton.  Theodora Hall.  Lacey Fields.  John Mallory.  Crystal

9   Norton.  Paula Harned.  Sondra Callaway.  Malinda Frangione.

10  Danny Waller.  Vickie Rogers.  Beverly Mullins.  D'Lisa Morse.

11  THE COURT:  Here's how this is going to work.  I am

12  going to ask a series of questions.  If you have any

13  affirmative answer to give me, please raise your hand and make

14  sure I see you and talk to you before we move on.

15  Those of you still in the courtroom seats are not

16  required to answer my questions unless and until you get

17  called up here, but I expect some of you will.

18  If you can keep a running catalog of answers in your mind

19  so that when you're called up here, you can give me the

20  answers without the need of my repeating the questions, that

21  will make this a little more efficient.

22  It is very important that you are completely frank and

23  honest with me.  The jury in this case will ultimately consist

24  of eight people.  So the lawyers will excuse some of you, and

25  they need as much information as they can get to do that

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1   wisely.

2       You have heard the statement of the case, and you know

3   what this case is about.  We are not going to begin the trial

4   today.  We will select a jury and ask you to come back next

5   Monday to begin hearing evidence.

6       It is possible that this case can go into the following

7   week.  I'm going to do everything I can to make sure that

8   we're done with you after next week, but you have to be

9   prepared.  The following week, the week after next, is the

10  week of Thanksgiving.

11      Now, before I ask you this question, I know that jury

12  service is inconvenient for everyone, but do any of you have,

13  for example, scheduled open heart surgery or nonrefundable

14  airline tickets or some other really good reason that you

15  could not sit through that time?

16      (No response in the affirmative or negative by

17  prospective jurors.)

18          THE COURT:  Good.

19      All right.  You have heard that this case can –– oh, I'm

20  sorry.  I need to introduce counsel first.

21      Lead counsel for plaintiff is Ezra Young.

22      Mr. Young, will you introduce the others at your table?

23          MR. YOUNG:  Yes.  Thank you, Your Honor.

24      My co-counsel to my left is Ms. Marie Galindo.

25  Co-counsel to my right is Ms. Brittany Novotny.  Also at

Case 5:15-cv-00324-C   Document 269   Filed 12/20/17   Page 7 of 52

7

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1    plaintiff's table is Dr. Rachel Tudor.

2         Thank you, Your Honor.

3              THE COURT:  Thank you.

4         Lead counsel for defendant is Dixie Coffey.

5              MS. COFFEY:  Your Honor, my co-counsel -- and jury,

6    my co-counsel Tim Bunson to my left, Jeb Joseph to his left;

7    President Sean Burrage, president of Southeastern Oklahoma

8    State University; and our legal assistant, Lori Cornell.

9              THE COURT:  Let me ask you if any of you know any of

10   these lawyers?  Have any of them or members of their firm

11   acted as counsel for you or close personal friends or family?

12        Do any of you know the parties?

13             PROSPECTVE JUROR CALLAWAY:  I've read about the case

14   in school, so...

15             THE COURT:  That will be one of my questions --

16             PROSPECTVE JUROR CALLAWAY:  Oh, sorry.

17             THE COURT:  -- but I'll get to that in a minute.

18        Do any of you know the parties?

19        (No response in the affirmative or negative by

20   prospective jurors.)

21             THE COURT:  Do any of you work for Southeastern

22   State?  Do any of you have degrees from there or ever attended

23   college there?

24        (No response in the affirmative or negative by

25   prospective jurors.)

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1          THE COURT:  All right.  Do any of you know anything

2  about the facts of this case other than what I've just told

3  you?

4      Ms. Callaway?

5          PROSPECTVE JUROR CALLAWAY:  Yes.

6          THE COURT:  And what was –– why do you know about

7  it?

8          PROSPECTVE JUROR CALLAWAY:  I'm attending SNU

9  University.  In my MBA class, Legal Environment, we talked

10  about this case.

11          THE COURT:  So did you talk about the merits of the

12  case?

13          PROSPECTVE JUROR CALLAWAY:  (Nods head.)

14          THE COURT:  I would suggest that we save

15  Ms. Callaway's services for some other case.

16      Any objection from counsel?

17          MS. COFFEY:  No objection, Your Honor.

18          MS. GALINDO:  No objection, Your Honor.

19          THE COURT:  All right.  Please return to the jury

20  assembly room and get further instructions there.

21      (Prospective Juror Callaway excused.)

22          THE COURT:  Clerk will call another name.

23          THE CLERK:  Loren Pascual.

24          THE COURT:  Is "Pascual" the correct pronunciation?

25          PROSPECTIVE JUROR PASCUAL:  Yes, ma'am.

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1          THE COURT:  All right.  Do you know any of the

2  lawyers or parties?

3          PROSPECTIVE JUROR PASCUAL:  No, I don't.

4          THE COURT:  All right.  Did anyone else have any

5  knowledge about this case?

6      (No response in the affirmative or negative by

7  prospective jurors.)

8          THE COURT:  Let me tell you that all of you will

9  have to speak to me before we're finished here.  So don't put

10  it off, don't be afraid.

11      How many of you have been jurors before, have served as

12  jurors?  All right.

13      Ms. Roth, tell me when and where.

14          PROSPECTIVE JUROR ROTH:  I think it was –– the first

15  time was about 11 years ago.  It was here in federal court,

16  and I did serve on a jury.

17          THE COURT:  Do you recall what the issues were?

18          PROSPECTIVE JUROR ROTH:  It was a drug case,

19  criminal case.

20          THE COURT:  Okay.

21          PROSPECTIVE JUROR ROTH:  And I was called for a jury

22  in San Antonio, but they ended up settling it before we came.

23  You know, they called us and had us be ready outside.  Those

24  are the only two times that I've actually been called to serve

25  on a specific case.

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1          THE COURT:  Okay.  Who down here?  Ms. Rogers?

2          PROSPECTIVE JUROR ROGERS:  Yes.  I don't remember

3     exactly when.  It was probably mid '90s in Kansas, where I

4     used to live.  It was a criminal murder trial --

5          THE COURT:  All right.

6          PROSPECTIVE JUROR ROGERS:  -- in Sedgwick County.

7          THE COURT:  Anyone else?

8          Let me make sure that both of you who have served before

9     know that the law in the case that you sat on will be

10    different.

11         Certainly in a criminal case, the burden of proof is

12    beyond a reasonable doubt.  That is not the burden of proof in

13    a criminal case.  I mean, in a civil case.

14         And there will be many other differences, both in the

15    evidence and the law.

16         Will either of you have any difficulty setting aside what

17    you may have learned in those other cases and following the

18    law, listening to the evidence in this case?

19         Ms. Roth?

20         PROSPECTIVE JUROR ROTH:  Yes, I could do that.

21         THE COURT:  And Ms. Rogers?

22         PROSPECTIVE JUROR ROGERS:  No problem.

23         THE COURT:  The rest of you may not have served on a

24    jury, but we all see trials and the legal system on TV, in the

25    paper, everywhere we look.

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1       Have any of you, as a result of that, or for any other

2   reason, formed such a strong opinion about the justice system,

3   lawsuits, plaintiffs, defendants, lawyers, anything, that

4   makes you think you know which side of this case is entitled

5   to your verdict before you hear any evidence?

6       This case obviously is an allegation of employment

7   discrimination.

8       Have any of you ever felt like you were discriminated

9   against in your employment or have ever made a claim either to

10  your employer or in court as to employment discrimination?

11      Mr. Payton, tell me about it.

12          PROSPECTIVE JUROR PAYTON:  It was about 35 years ago

13  with General Motors.

14          THE COURT:  And did you go to court or just make a

15  complaint within the job site?

16          PROSPECTIVE JUROR PAYTON:  They settled before we

17  went to court.

18          THE COURT:  Were you satisfied with the outcome of

19  that?

20          PROSPECTIVE JUROR PAYTON:  Yes.

21          THE COURT:  And with the process of that?

22          PROSPECTIVE JUROR PAYTON:  Yes.

23          THE COURT:  Would your experience in that regard

24  make you tend to favor the plaintiff in a lawsuit such as

25  this?

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1           PROSPECTIVE JUROR PAYTON:  (Shakes head.)

2           THE COURT:  Will you listen to the evidence and

3 return a verdict according to the evidence you hear here and

4 not your own personal experience?

5           PROSPECTIVE JUROR PAYTON:  Yes.

6           THE COURT:  Anyone else?

7       (No response in the affirmative or negative by

8 prospective jurors.)

9           THE COURT:  Have any of you had a claim made against

10 you for employment discrimination or against your employer

11 that you somehow had an involvement in?

12       (No response in the affirmative or negative by

13 prospective jurors.)

14           THE COURT:  Have any of you been involved in a

15 lawsuit before?  I'm going to exclude any family matter,

16 divorce or that sort of thing, or any probate matter.

17       Other than that, have you been involved, as a plaintiff

18 or a defendant, in a lawsuit?  As a witness?

19       (No response in the affirmative or negative by

20 prospective jurors.)

21           THE COURT:  You guys are going to have to speak up

22 sooner or later.

23       Have any of you worked as instructors of any kind at a

24 college or university?

25       (No response in the affirmative or negative by

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1   prospective jurors.)

2           THE COURT:  Have any of you ever been involved in

3   the grant or denial of tenure?

4       (No response in the affirmative or negative by

5   prospective jurors.)

6           THE COURT:  Let me expand that a little.  I need to

7   back up.

8       Have any of you, members of your close -- close members

9   of your family or close personal friends -- when I say "you,"

10  I mean all those people.  Not Uncle Eddie that you see once

11  every three years at Thanksgiving, but people that you see

12  frequently, talk to, and have a relationship with.

13      So if I backed up and asked you about the claim of

14  discrimination, either by you or any of those people or

15  against you or any of those people, would that make a

16  difference?

17      (No response in the affirmative or negative by

18  prospective jurors.)

19          THE COURT:  Okay.  And also as to teaching at a

20  university or tenure?

21      (No response in the affirmative or negative by

22  prospective jurors.)

23          THE COURT:  I am going to read a list of names.  I

24  know this is very difficult when you have no context to put

25  these people in.  At the end of reading this list, I'm going

Case 5:15-cv-00324-C   Document 269   Filed 12/20/17   Page 14 of 52

14

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1    to ask you if you know anyone on it.

2         These are people who may be called as witnesses in this

3    case.  I don't want you to panic at the length of this list

4    because they won't all be called, but they could be.

5         Dr. Rachel Tudor, Judge Richard Ogden, Dr. George Brown,

6    Dr. Robert Dale Parker, Ms. Melinda "Mindy" House, Dr. Paula

7    Smith Allen, Dr. Daniel Althoff, Mr. Charles Babb, Dr. Janet

8    Barker, Dr. Bryson Clark, Dr. Lisa Coleman, Ms. Cathy Conway,

9    Dr. Margaret Cotter-Lynch, Dr. William Fridley, Dr. Charla

10   Hall, Dr. James Knapp, Ms. Jana Legako, Dr. Lawrence "Larry"

11   Minks, Dr. Lucretia Scoufos, Dr. Douglas McMillan, Dr. John

12   Mischo, Dr. Virginia Parrish, Dr. Randy Prus, Dr. Sharon

13   Robinson, Dr. Jesse Snowden, Dr. Mark Spencer, Dr. Claire

14   Stubblefield, Mr. Ross Walkup, Dr. Charles Weiner, Ms. Whitney

15   Popchoke, Dr. Mike Davis, Ms. Sheridan McCaffree, Ms. Jane

16   McMillan, Ms. Kathy Nusz, Dr. Don Weasenforth, Ms. Holly

17   Newell.

18        Do any of you know any of those names?

19        (No response in the affirmative or negative by

20   prospective jurors.)

21             THE COURT:  Do any of you have a physical disability

22   that I would need to know about in order to make your jury

23   service comfortable and possible?

24        (Prospective Juror Taylor raises hand.)

25             THE COURT:  Do any of you have any reason, whether I

Voir Dire - Tudor v. SOSU, et al.
November 8, 2017

1  know to ask about -- oh.

2          PROSPECTIVE JUROR TAYLOR:  I have just one.  I'm

3  pre-diabetic.  I'm okay if I just eat something.  I'm not on

4  medicine or anything, but if I don't eat or something, I don't

5  feel real good.

6          THE COURT:  Okay.  We can certainly handle that.

7          PROSPECTIVE JUROR TAYLOR:  That's the only -- it's

8  not bad.  It's just --

9          THE COURT:  Okay.  And that was Ms. Taylor.

10     Do any of you know of any reason you wouldn't be a fair

11 and impartial juror whether I know to ask about it or not?

12     I want you to just do this little exercise in your mind.

13 Put yourself at the table as if you were plaintiff.  Put

14 yourself at the table over here as if you were defendant.

15 Would you be satisfied with someone in your frame of mind to

16 sit as a juror if you were a party in this case?

17     If not, please raise your hand.

18     (No response in the affirmative or negative by

19 prospective jurors.)

20          THE COURT:  This is where you-all get to speak to

21 me.  There's going to be a list of things on your screen in a

22 minute.

23     I'm going to have you -- I will ask you to stand -- it's

24 very important that we all hear you -- and give us your name,

25 the name of your spouse, the community in which you live,

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1   where you and your spouse work, your education, and any

2   special interests or significant life experiences.

3       I'm going to start at the back with Ms. Taylor.  Please

4   stand and tell me those things.

5           PROSPECTIVE JUROR TAYLOR:  My name is Marsha Gayle

6   Taylor.  I live in Oklahoma City, Oklahoma, southwest Oklahoma

7   City.

8       I work at Sam's Club, the one on Southwest 5th between

9   Meridian and MacArthur.  I'm a widow.  My husband passed away

10  12 years ago.  My daughter passed away two years ago almost.

11          THE COURT:  I'm sorry.

12          PROSPECTIVE JUROR TAYLOR:  I attended college.  I

13  have almost an associate's.  I like about three more classes.

14  I didn't finish them.  Sorry.  It just -- life got in the way.

15  So long story short on that one, but I have medical and

16  psychology.  I've done both.

17      Special interests.  I like making soap.

18          THE COURT:  Thank you.

19          PROSPECTIVE JUROR TAYLOR:  I'm weird.  I make

20  candles, soaps.  I love going to the mountains, the woods.  It

21  is my solitude.  I have a dog I love.  I know I sound like

22  a --

23          UNKNOWN JUROR:  You sound normal.

24          THE COURT:  Thank you.

25      Ms. Roth.

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1        PROSPECTIVE JUROR ROTH:  My name is Joyce Roth, and

2    I live in Newcastle, Oklahoma.

3        I'm retired.  I used to be an occupational therapy

4    assistant.  I am married.  My husband's name is Phil Roth.  He

5    is also retired.  He was a mechanical engineer at Tinker for

6    most of his career.  I have a bachelor's degree in elementary

7    education and then an associate's in occupational therapy.

8        Special interests or significant life experiences:  I

9    spend a lot of time with church activities, and I like to

10    bicycle.

11        My grandchildren -- I have seven grandchildren, and we

12    spend a lot of time with them.  My husband is home today with

13    two three-year-old twins.  Anyway, that's kind of -- I like

14    to -- like I said, I like to bicycle and physical activities.

15        THE COURT:  Thank you.

16    Mr. Payton.

17        PROSPECTIVE JUROR PAYTON:  Yes.  My name is Raymond

18    Payton.  I live in northeast Oklahoma City.  I work for the

19    State of Oklahoma at the Disability Determination Division as

20    a program administrator.

21        I'm married.  I have two young men.  My spouse is -- her

22    name is Mildred Payton, and she works for the Internal Revenue

23    Service.

24        My education:  I have a bachelor's degree from Grambling

25    State University.  I attended the University of District of

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1   Columbia.  I finished my MBA at the old Central State.

2       My interests:  I'm a deacon at St. John Missionary

3   Baptist Church.  I enjoy my church service.  I enjoy fishing

4   and hunting and a little bit of working on cars.  I get to a

5   point now where I can walk by it and that's not a problem.

6           THE COURT:  Tell me again where you got your

7   undergraduate degree.  I didn't hear you.

8           PROSPECTIVE JUROR PAYTON:  From Grambling State

9   University, Grambling, Louisiana.

10          THE COURT:  Okay.  Thank you.

11      Ms. Hall.

12          PROSPECTIVE JUROR HALL:  My name is Theodora Hall.

13  I go by Lynn, L-Y-N-N.  It's easier.

14      I live in Oklahoma City, northeast side.  I work at

15  Rightway Medical, which is a methadone clinic.

16      I'm not married.  I live with my boyfriend.  I have a

17  14-year-old son.  My boyfriend works at -- his name is Corey

18  Turnbull.  He works at Mathis Brothers warehouse.

19      Education:  Undergrad at O.U.  They rock.  Master's

20  degree at Langston University.

21      Special interest is riding my three-wheel Can-Am

22  anywhere.  Wherever you tell me to go, I'll be there, and I

23  like to travel.

24          THE COURT:  All right.

25      Ms. Fields?

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1          PROSPECTIVE JUROR FIELDS:  My name is Lacey Fields.

2     I live on the northwest side of Oklahoma City.  I am single.

3     I am 21 years old, and I currently go to UCO, and I'm a

4     biology major, and I am assistant manager at Tilly's.  It's a

5     retail store.  And special interest.  I like to travel with

6     the free time I have.

7          THE COURT:  All right.

8       Mr. Mallory.

9          PROSPECTIVE JUROR MALLORY:  Yes, ma'am.

10      John Mallory.  I live in far northwest Oklahoma City.

11    We've lived in Oklahoma City 30 years.

12      I work for Power Solutions International out of Chicago,

13    engine manufacturer.  I'm over oil and gas business

14    development.  I've been in the oil and gas industry for 35

15    years.  I had worked at Sandridge for eight years before going

16    to PSI.

17      I'm married thirty- —-

18          THE COURT:  Oh, you need to know that.

19          PROSPECTIVE JUROR MALLORY:  Carry the one.

20    Thirty-five years.

21      My spouse's name is Anna Jean.  She works for the

22    Governor's —- well, she used to work in the Governor's office.

23    She is now in the Oklahoma Senate.

24      I am highly educated from Louisiana as well, Louisiana

25    Tech University and finished at Northwestern State University.

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1          Special interests:  Work, kids.  I've got three grown

2    kids.  They're all taxpayers out of school, OSU and O.U.  So

3    we paid dearly to both.  Church, community minister, those

4    kinds of things.

5          THE COURT:  What did your wife do for the Governor?

6    What does she do in the Senate?

7          PROSPECTIVE JUROR MALLORY:  She was an executive

8    assistant for the Chief of Staff for seven years before she

9    went into the Senate.

10          THE COURT:  Is she a member?  A Senator?

11          PROSPECTIVE JUROR MALLORY:  She is the executive

12    assistant to Senator Adam Pugh, a freshman Senator from

13    Edmond.

14          THE COURT:  All right.

15       Ms. Norton.

16          PROSPECTIVE JUROR NORTON:  Hi.  My name is Crystal

17    Norton.  I am a Yukon address, Mustang High School.  My

18    children —— I have two children.  One goes to Mustang High

19    School and one to elementary.

20       I am currently separated.  My husband's name is Daniel

21    Norton.  He is in the United —— the Air Force National Guard.

22       I have a bachelor's degree from Southwestern Oklahoma

23    State University in social work, and I like to spend time with

24    my children and travel.

25          THE COURT:  All right.

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1      Ms. Morse.

2          PROSPECTIVE JUROR MORSE:  My name is D'Lisa Morse.

3  I live in Meeker, Oklahoma.  I do not work.  I'm a

4  stay-at-home mom.

5      I am married.  My husband's name is Cody Morse.  He works

6  for DCP Midstream.  He's an instrumentation and electronics

7  technician.

8      I did some college at Rose State.  And I have three kids,

9  so I don't have time for special interests or anything.

10         THE COURT:  Ms. Mullins.

11         PROSPECTIVE JUROR MULLINS:  Hi.  I'm Beverly

12  Mullins.  I live in Dibble, Oklahoma.  I work at Tinker Air

13  Force Base.  I work for the Department of Defense.  I'm a cost

14  price analyst there.

15      I am not married.  I have a bachelor's degree in

16  economics and finance from Southern Illinois University in

17  Edwardsville, Illinois.

18      Special interest is getting my 18-year-old finally

19  launched.  He graduated high school, and we're working on

20  where he will go.  I love to garden and walk my dogs.

21         THE COURT:  All right.

22      Ms. Rogers.

23         PROSPECTIVE JUROR ROGERS:  My name is Vickie Rogers.

24  I live in the country by Katie, but my mailing address is

25  Elmore City.  I work for Michelin in Ardmore, been there about

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1    nine years.  I'm single.

2         I have a bachelor's degree from Wichita State University.

3    I went to OCU law school for about a year and a half in '89

4    and '90, and then I went to Iraq on contracting work and got a

5    master's in human resources from Villanova while I was over

6    there.

7         I like to travel.  I have a couple of horses, a dog, a

8    lot of feral cats.  I'm kind of a workaholic.  So...

9              THE COURT:  Mr. Waller.

10             PROSPECTIVE JUROR WALLER:  My name is Danny Waller,

11   Jr.  I'm from Shawnee, Oklahoma.  I work and own a small

12   family land surveying business with my father in Shawnee.

13        I am single.  I do have a daughter and two grandchildren.

14   They live in Arkansas.

15        My education:  I graduated from Meeker High School, went

16   to the old Southwest Technical College that used to be in

17   Oklahoma City off I-35 that's now closed down in automotive

18   paint and body.  I have some college in business but never

19   finished, of course.

20        Special interests are golf, spending time with my family,

21   taking care of my dad.  I used to take care of my mom before

22   she passed away also.  Just enjoying life and auto racing,

23   motorcycle riding, and the great outdoors.

24             THE COURT:  Ms. Frangione.

25             PROSPECTIVE JUROR FRANGIONE:  My name is Malinda

Case 5:15-cv-00324-C   Document 269   Filed 12/20/17   Page 23 of 52

23

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1    Frangione.  I live in Yukon, Oklahoma.  I work for the State
2    of Oklahoma, for the Oklahoma Healthcare Authority.  I'm a
3    paralegal.
4         My husband is Ron Frangione.  He's a self-employed
5    attorney.
6         My education:  I have a bachelor's degree from Oklahoma
7    City University.
8         My special interests:  My mother died recently, and I've
9    been flying back and forth to North Carolina and working.  So
10   I haven't had a lot of time to think about special interests.
11        THE COURT:  All right.
12        Ms. Pascual.
13        PROSPECTIVE JUROR PASCUAL:  I'm Loren Pascual.  I go
14   by Lori.  I live in Norman.  I am employed at Michael Kors.  I
15   am married to Koby Pascual, who owns a transportation company.
16   I graduated from the University of Oklahoma, and I love my dog
17   and working out.
18        THE COURT:  All right.
19        Ms. Harned.
20        PROSPECTIVE JUROR HARNED:  My name is Paula Harned.
21   I live in Oklahoma City.  I work for Auto Finance USA as an
22   assistant title clerk.  I am not married; I am divorced.  I
23   have a little bit of college education.  My special interests
24   are my grandkids and hunting and fishing.
25        THE COURT:  Thank you.

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1          I forgot to ask you earlier if any of you or members of

2    your family were part of the legal profession.

3          I heard –– Ms. Pascual, your –– no.

4          Ms. Frangione, your husband is a solo practitioner?

5                    PROSPECTIVE JUROR FRANGIONE:  Yes.

6                    THE COURT:  And what kind of –– does he specialize

7    in anything or do whatever walks in the door?

8                    PROSPECTIVE JUROR FRANGIONE:  He mainly works with

9    workers' comp.  He works with businesses.

10                    THE COURT:  Okay.  There was somebody else whose

11    wife was a paralegal.  Somebody was a –– well, yes, Ms. Rogers

12    you went to law school.

13                    PROSPECTIVE JUROR ROGERS:  She was a paralegal;

14    right?

15                    PROSPECTIVE JUROR FRANGIONE:  Right.

16                    THE COURT:  And who do you work for again?

17                    PROSPECTIVE JUROR FRANGIONE:  I work for the

18    Oklahoma Healthcare Priority.

19                    THE COURT:  And what kind ––

20                    PROSPECTIVE JUROR FRANGIONE:  I was in private

21    practice for about 20 years downtown.  Now I'm a paralegal at

22    the Healthcare Authority.

23          We –– I work for an administrative law judge that

24    oversees –– we hear people's complaints about Medicaid and

25    what we can grant them, what we can't.

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

```
1              THE COURT:  Who did you work for in the private
2   sector?
3              PROSPECTIVE JUROR FRANGIONE:  Oh, gosh.
4              THE COURT:  Lots of people?
5              PROSPECTIVE JUROR FRANGIONE:  Well, I stayed with
6   one firm for 13, one for five, you know.  It's been a while.
7              THE COURT:  And what are those two firms?
8              PROSPECTIVE JUROR FRANGIONE:  Miller Dollarhide was
9   one.  Another one was a group of attorneys, Lynn & Helms, and
10  that doesn't exist anymore; they broke away.
11             THE COURT:  So in the private sector, did you ever
12  work on an employment discrimination lawsuit, or did your
13  lawyers work on those, that you know of?
14             PROSPECTIVE JUROR FRANGIONE:  Not to my memory right
15  now.
16             THE COURT:  Will you be able to follow the law as I
17  give it to you, whether you agree with it or not?
18             PROSPECTIVE JUROR FRANGIONE:  Yes.
19             THE COURT:  All right.  Anyone else that -- yes,
20  Mr. Payton?
21             PROSPECTIVE JUROR PAYTON:  My son is an attorney.
22  He works for the U.S. Senate Minority leader on Capitol Hill.
23             THE COURT:  Has he ever been in the private sector?
24  Do you know if he's ever handled employment discrimination
25  cases, either for or against?
```

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1        PROSPECTIVE JUROR PAYTON:  No.

2        THE COURT:  One of the instructions that I will give

3   you, all of you, every time you leave this courtroom, is that

4   you are not to discuss this case among yourselves or with

5   anyone else.

6        That certainly includes lawyer spouses or co-workers

7   or -- you just cannot discuss this case.

8        Will that create a difficulty for any of you?

9        (Several prospective jurors respond in the negative.)

10        THE COURT:  All right.  I'm going to permit the

11   lawyers to ask you questions, and I will recognize Ms. Galindo

12   first.

13        MS. GALINDO:  Thank you, Your Honor.

14        May it please the Court, the Government, and ladies and

15   gentlemen of the jury:

16        Good morning.  My name is Marie Galindo.  It is my

17   privilege to speak to you this morning on behalf of Dr. Rachel

18   Tudor.  I have just a few questions, and I'm going to

19   respectfully encourage you to answer with a nod, a raised

20   hand, or a verbal response.

21        What if you started your job and you were a practicing

22   Methodist, you worked there for some time, and you had a

23   change of heart, and you changed your practicing religion to

24   Baptist sometime later, and, for some reason, those in power

25   at your job started treating you differently because you

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1  changed it?

2      How do you feel about that?  What about you, Ms. Roth?

3          PROSPECTIVE JUROR ROTH:  Just on the -- that

4  information, you know, that doesn't seem right.

5          MS. GALINDO:  Anybody else agree with --

6          THE COURT:  Let me have counsel at the bench,

7  please.

8      (The following proceedings were had at the bench and out

9  of the hearing of the jury.)

10         THE COURT:  This is the ear of the court reporter

11  throughout this trial.  So make sure that's what you are

12  speaking into.

13         MS. GALINDO:  Thank you, Your Honor.

14         THE COURT:  I told you I don't want you calling on

15  individual jurors.  I don't want you arguing your case.

16         MS. GALINDO:  Okay.

17         THE COURT:  This is more of an opening statement

18  than a question.  Do you have a question?  Ask to see raised

19  hands, but don't call on people --

20         MS. GALINDO:  Okay.  Thank you, Your Honor.

21         THE COURT:  -- until they have an answer.

22         MR. JOSEPH:  Also, just a point of clarification,

23  Your Honor, did we or did we not discuss the appropriateness

24  of bringing up religion at this point in the case?

25         THE COURT:  We never talked about religion.

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1          MR. JOSEPH:  Okay.  I know we excluded some hearsay,

2     but that was just because it was hearsay, not because of the

3     subject of the hearsay; is that right?

4          THE COURT:  (Nods head.)

5          MR. JOSEPH:  Okay.  Thank you, Your Honor.

6          MS. GALINDO:  Thank you, Your Honor.

7        (The following proceedings were had in open court with

8     all parties present and within the hearing of the jury.)

9          THE COURT:  I know that's so annoying.  My

10    apologies.

11         MS. GALINDO:  When a woman gets married and takes

12    her husband's name, is it okay to call her by her old name?

13         PROSPECTIVE JUROR MORSE:  If she's okay with it.

14         MS. GALINDO:  Does it dishonor her marriage if she's

15    called by a different name?

16       (Several prospective jurors respond in the negative.)

17         MS. GALINDO:  How many of you or a loved one has

18    lost your job?

19         THE COURT:  Mr. Mallory, tell us the circumstances.

20         PROSPECTIVE JUROR MALLORY:  Lost my job.  Economic

21    downturn, eight years with Sandridge.  Groundhog Day 2016, me

22    and 750 of my closest friends were told adios.

23         THE COURT:  Mr. Payton, tell us the circumstances.

24         PROSPECTIVE JUROR PAYTON:  Laid off due to a

25    reduction in force and with that incident with General Motors.

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1        THE COURT:  Would either of you find it difficult to

2   be fair and partial in this case?

3        PROSPECTIVE JUROR PAYTON:  No, ma'am.

4        MR. MALLORY:  No, ma'am.

5        THE COURT:  All right.  Please proceed.

6        MS. GALINDO:  Thank you, Your Honor.

7     If you did something really significant or made an

8   important decision in your job, would you remember it if it

9   had a powerful impact, like it took food off someone's table?

10    (Several prospective jurors respond in the affirmative.)

11        MS. GALINDO:  What if you're a juror and you have a

12   very important fact and it comes down to a swearing match, how

13   do you size up who's telling the truth?

14        PROSPECTIVE JUROR ROTH:  What do you mean by

15   "swearing match"?

16        THE COURT:  I'm not going to permit that question.

17   That's too open-ended for anyone to answer.

18        MS. GALINDO:  Thank you, Your Honor.

19     How many of you have to work for a certain number of

20   years before you can retire?

21    (Several prospective jurors raise hands.)

22        PROSPECTIVE JUROR ROGERS:  Well, you don't have to.

23   You can always just leave.

24        MS. GALINDO:  Thank you.

25        THE COURT:  How many of you were Boy Scouts or Girl

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1   Scouts and had to earn merit badges or patches?

2        (Several prospective jurors raise hands.)

3            MS. GALINDO:  What if you earned them, but just as

4   you got the patch or the badge, the finish line was moved?

5            PROSPECTIVE JUROR MORSE:  That would be frustrating.

6            PROSPECTIVE JUROR TAYLOR:  I would be upset.

7            MS. GALINDO:  Have you ever been mistreated by

8   someone who had power over you and you felt there was nothing

9   you can do about it?

10           PROSPECTIVE JUROR TAYLOR:  I did.  I work at Sam's.

11  Sometimes it's difficult to work there, and I clashed with my

12  supervisor really, really bad.

13       And I just went to the management, and they fixed it.  So

14  it was all good.  But I sat down and I talked to her, and we

15  all talked together, and we fixed it.

16           MS. GALINDO:  How many of you have stood up for

17  individuals you felt to have been mistreated?

18       (Several prospective jurors raise hands.)

19           MS. GALINDO:  How many of you were born in Oklahoma?

20       (Several prospective jurors raise hands.)

21           MS. GALINDO:  I'm from west Texas.  I was born and

22  raised in Midland, Texas.

23       Will any of you hold it against Dr. Tudor if one or two

24  of her attorneys here today weren't born in Oklahoma?

25           (No response in the affirmative or negative by

Case 5:15-cv-00324-C   Document 269   Filed 12/20/17   Page 31 of 52

31

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

```
 1    prospective jurors.)

 2            MS. GALINDO:  Who of you trust the Government to

 3    always do the right thing or get it right?

 4        (No response in the affirmative or negative by

 5    prospective jurors.)

 6            MS. GALINDO:  Any of you prepare your own tax

 7    returns?

 8        (Several prospective jurors raise hands.)

 9            MS. GALINDO:  Anybody else here have a problem

10    righting wrongs using tax dollars?

11            MR. MALLORY:  Repeat your question, please.

12            MS. GALINDO:  Thank you, sir.

13        Anyone here have a problem righting a wrong using tax

14    dollars to do so?

15            PROSPECTIVE JUROR ROGERS:  On an individual case by

16    case -- you know, if it affects the whole.  That's just kind

17    of a broad question.

18            MS. GALINDO:  The defendants are represented by the

19    Government, and it's only us here with Dr. Tudor.

20        Are you going to hold that against Dr. Tudor?

21        (Several prospective jurors respond in the negative.)

22            MS. GALINDO:  If I, as a female attorney, vigorously

23    question a male with a big title and important

24    responsibilities, as I would for members of your family, but

25    if I do it for Dr. Tudor, are you going to have a problem with
```

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

 1  that?

 2      (Several prospective jurors respond in the negative.)

 3          MS. GALINDO:  Now, I know Oklahomans, like Texans,

 4  love their sports.  And I tend to be a bit biased for my team

 5  sometime if there's a controversial or close call.

 6      Anybody else here like that about their team?

 7          PROSPECTIVE JUROR WALLER:  When it comes to sports,

 8  yes.

 9          MS. GALINDO:  In this case, if you are not the right

10  juror to sit and judge the facts and the law, for whatever

11  reason you feel that, and there might be a more perfect case

12  for you on a different day, anybody feel that way?

13      (No response in the affirmative or negative by

14  prospective jurors.)

15          MS. GALINDO:  Anyone here have a special imprint

16  from a former English teacher?

17          THE COURT:  I don't understand that question.

18          MR. MALLORY:  What?  Say that again.

19          MS. GALINDO:  I'm sorry, Your Honor.  I'll rephrase

20  it.

21      Anyone here have a favorite teacher who left a special

22  imprint on them?

23      (Several prospective jurors raise hands.)

24          PROSPECTIVE JUROR TAYLOR:  Several of them.  Several

25  of them were awesome.

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1    PROSPECTIVE JUROR ROGERS:  I've had several.

2    MS. GALINDO:  Some of you have mentioned that you

3  have served on juries.  I believe in those instances they were

4  both criminal cases.

5    The burden of proof in those cases is beyond a reasonable

6  doubt.

7    THE COURT:  Ms. Galindo, I will invite you to be

8  seated.  They've already answered that question.

9    MS. GALINDO:  Thank you, Your Honor.  My apology to

10  the Court.

11    THE COURT:  Mr. Joseph.

12    MR. JOSEPH:  Thank you, Your Honor.

13    Good morning, ladies and gentlemen.  So my name is Jeb

14  Joseph.  I am an Assistant Attorney General, and that means I

15  represent the State and its agencies and their employees when

16  the State gets sued.

17    So with that in mind, let me ask you, have any of you --

18  I think you heard earlier the judge say this case was about a

19  State university and its board of regents.

20    Have you ever had any experiences with the State of

21  Oklahoma or its employees that would interfere with your

22  ability to be fair in this matter?

23    (No response in the affirmative or negative by

24  prospective jurors.)

25    MR. JOSEPH:  Okay.  Opposing counsel asked you

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

```
 1   earlier if you'd ever had a dispute with a supervisor, but I
 2   want to know, have you ever had a dispute with a co-worker or
 3   a subordinate?  If so, could you tell me a little bit about
 4   that?
 5            PROSPECTIVE JUROR WALLER:  Just typical, you know,
 6   somebody not doing their job the way that you've instructed or
 7   asked them to do.
 8        So, you know, you kind of have to reassure them and
 9   reinform them to do it the correct way and try not to make a
10   mistake.  I mean, nothing drastic.  Just the normal
11   day-in-and-day-out of business.
12            MR. JOSEPH:  Okay.  And is it Mr. Waller?
13            PROSPECTIVE JUROR WALLER:  Yes.
14            MR. JOSEPH:  Do you find that approach to be
15   effective?
16            PROSPECTIVE JUROR WALLER:  Most of the time, yes, as
17   long as you handle it in a professional man-to-man or
18   man-to-woman manner.
19            MR. JOSEPH:  Okay.  Anybody else have a similar
20   experience as a supervisor or co-worker or with a co-worker or
21   a subordinate?
22        Mr. Mallory, yes, or -- I'm sorry.
23            MR. MALLORY:  Yes, sir, numerous.  I mean, we're all
24   human.  There's rules, and rules are followed.
25        Usually -- since we're imperfect humans, we have a
```

Case 5:15-cv-00324-C   Document 269   Filed 12/20/17   Page 35 of 52

35

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1    tendency to not follow rules, and you have communication

2    sessions and training sessions, and you reach that agreement,

3    and you go on about your business.  It's just part of life.

4            MR. JOSEPH:  Anybody have a different experience on

5    that particular question that they'd care to share?

6        (No response in the affirmative or negative by

7    prospective jurors.)

8            MR. JOSEPH:  "No"?  Okay.

9        Anybody here have any bumper stickers on their car?

10       (No response in the affirmative or negative by

11   prospective jurors.)

12           MR. JOSEPH:  Nobody does that anymore?  Okay.

13       Does everyone here agree that professional people in a

14   workplace can have legitimate differences of opinion without

15   that being unfair or discriminatory?

16       (Several prospective jurors respond in the affirmative.)

17           MR. JOSEPH:  Okay.  Does anyone here not agree that

18   State agencies have a duty to spend their taxpayers' money

19   wisely?

20       (Several prospective jurors respond in the affirmative.)

21           MR. JOSEPH:  Okay.  Has anybody ever -- has anybody

22   here ever had a particularly poor teacher or a bad experience

23   with a teacher, either yourself or perhaps one of your

24   children in school?  Something you could share with us.

25       Ms. Fields?

Case 5:15-cv-00324-C   Document 269   Filed 12/20/17   Page 36 of 52

36
Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1    PROSPECTIVE JUROR FIELDS:  I mean, I just had a

2  teacher who literally didn't teach, but that was pretty much

3  my experience.  They would just sit there and have us read the

4  whole period.

5              MR. JOSEPH:  Anybody else have --

6              MS. GALINDO:  Your Honor, may we approach?

7              MR. JOSEPH:  -- a similar experience?

8              THE COURT:  I'm sorry?

9              MS. GALINDO:  May we approach, Your Honor?

10             THE COURT:  Yes.

11       (The following proceedings were had at the bench and out

12  of the hearing of the jury.)

13             MS. GALINDO:  Your Honor, I was going to object.  I

14  believe the instructions were that -- and I apologize if I

15  misunderstood -- that we couldn't ask them individual

16  questions.

17             THE COURT:  Not randomly.  If they respond, then

18  you're allowed to follow up.  And I believe I said that

19  earlier to you, which is what I understood was happening.

20             MR. JOSEPH:  And I'm -- that was my understanding,

21  Your Honor.  As people nod or start to verbalize, I just go

22  ahead and name them so they have the opportunity to vocalize

23  what their concern is.

24             THE COURT:  And that's all right.  I just want to

25  make sure that you understand that about half of this is

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1  getting on the record because you're not asking names, they're

2  answering in a group.

3      If you want it on the record, you need to make it --

4          MR. JOSEPH:  More clear?

5          THE COURT:  -- more clear.  You need to name names,

6  although I don't know why you would want all this on the

7  record.  I'm just telling you.

8          MR. JOSEPH:  Thank you, Your Honor.

9          MS. GALINDO:  Thank you.

10     (The following proceedings were had in open court with

11  all parties present and within the hearing of the jury.)

12          MR. JOSEPH:  Thank you, Your Honor.  I apologize.

13     I think, Ms. Fields, you were telling us about a bad

14  experience with a teacher that didn't really teach.  Is that

15  what you said?

16          PROSPECTIVE JUROR FIELDS:  Yeah.

17          MR. JOSEPH:  Okay.  What was your experience like in

18  that class overall?

19          PROSPECTIVE JUROR FIELDS:  I mean, the class wasn't

20  so bad.  We just didn't learn anything.  So when I moved on

21  later, I had no knowledge of what I was supposed to have

22  knowledge over.

23          MR. JOSEPH:  And was that at the high school or

24  college level?

25          PROSPECTIVE JUROR FIELDS:  That was at high school

Voir Dire - Tudor v. SOSU, et al.
November 8, 2017

```
 1   going into college, so, yeah.
 2               MR. JOSEPH:  Okay.  I thought I saw another head
 3   shaking.
 4       Did anyone else have a similar experience with a bad
 5   teacher either for yourself or one of your children perhaps?
 6       (No response in the affirmative or negative by
 7   prospective jurors.)
 8               MR. JOSEPH:  "No"?  Okay.
 9       Has anyone here ever had an experience where you felt
10   like you were not properly trained for the job that you were
11   supposed to do?
12       Ms. Mullins?
13               PROSPECTIVE JUROR MULLINS:  No.  I'm thinking.  I've
14   had a lot of jobs in my career, and I'm trying to think.  I've
15   worked for DOD a long time.  You get -- you typically are
16   trained pretty well for your next step.
17               MR. JOSEPH:  Okay.  Does anyone here feel like they
18   were not told at a workplace how to raise complaints or
19   concern with work conditions?
20       (No response in the affirmative or negative by
21   prospective jurors.)
22               MR. JOSEPH:  "No"?  Okay.
23       May I have one moment to confer with co-counsel, Your
24   Honor?
25               THE COURT:  Of course.
```

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

```
1              MR. JOSEPH:  Thank you.
2         Be right back, ladies and gentlemen.
3         (Defense counsel confer off the record.)
4              MR. JOSEPH:  Thank you for your time and attention.
5         I have nothing further, Your Honor.
6              THE COURT:  Is anyone on the jury in need of a
7    break?
8         (Several prospective jurors respond in the negative.)
9              THE COURT:  Okay.
10        Counsel, come forward, please.
11        (The following proceedings were had at the bench and out
12   of the hearing of the jury.)
13             THE COURT:  Any challenges for cause from
14   plaintiff?
15             MS. GALINDO:  Your Honor, Juror No. 5, Lacey;
16   potentially No. 6, Mallory.
17             THE COURT:  Well, wait, wait.  Why No. 5?  What's
18   the cause?
19             MS. GALINDO:  Oh, I'm sorry.  Your Honor, she
20   mentioned her schoolteacher in school.  It seemed like it was
21   a profound experience for her, and I didn't know if she hears
22   anyone alleging that about Dr. Tudor --
23             THE COURT:  It didn't sound like a profound
24   experience to me, and that doesn't disqualify her.
25             MS. GALINDO:  Okay.  Thank you, Your Honor.
```

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1    Your Honor, two individuals went to RUSO schools.

2         THE COURT:  The what school?

3         MS. GALINDO:  RUSO schools.

4         THE COURT:  RUSO?

5         MR. YOUNG:  One of the defendants.

6         MS. GALINDO:  One of the defendants.

7         MR. YOUNG:  Regional University System of Oklahoma.

8         THE COURT:  Oh.

9         MS. GALINDO:  Sorry for the abbreviation.

10   Mallory, I believe, his wife.  Then also Norton, I

11   believe she attended there.

12        THE COURT:  And you believe that disqualifies them?

13        MR. YOUNG:  To the extent that --

14        THE COURT:  Well, I'll ask a follow-up question.

15        MS. GALINDO:  Okay.

16        THE COURT:  Anything else?

17        MS. GALINDO:  With respect to, I think it was,

18   Ms. Frangione, she mentioned working for -- she had quite a

19   varied legal experience.

20   I don't know if her experience -- she used the word

21   "complaint" rather heavily with respect to assessments of the

22   workers' comp claims.  So I wasn't sure about her.

23        THE COURT:  So you challenge her for cause?

24        MS. GALINDO:  Yes, Your Honor.

25        THE COURT:  And the cause is that she used the word

Case 5:15-cv-00324-C   Document 269   Filed 12/20/17   Page 41 of 52

41

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1    "complaint"?

2              MS. GALINDO:  She seemed to look unfavorably.  I

3    apologize, Your Honor.  For those who have complained against

4    the Government or --

5              THE COURT:  I didn't hear that.

6              MS. GALINDO:  Okay, all right.

7              THE COURT:  Anything else?

8         Any challenges from defendant?

9              MR. JOSEPH:  No challenges for cause, Your Honor.

10             THE COURT:  All right.  I think as soon as I ask

11   these follow-up questions, assuming it doesn't disqualify

12   anybody, I'm going to take a break so you-all can discuss who

13   you want to excuse.

14        I normally don't do that, but you-all are going to ask

15   for it, so I'll go ahead and do it, but it's not going to be

16   long.  So you need to get that ready to go.

17             MS. GALINDO:  Thank you, Your Honor.

18             MR. JOSEPH:  Thank you, Your Honor.

19        (The following proceedings were had in open court with

20   all parties present and within the hearing of the jury.)

21             THE COURT:  Several of you -- and I'm not sure now

22   who because I wasn't listening for it at the time -- attended

23   or your spouses attended what I always -- what my kids always

24   called directional universities, which are really the Regional

25   University System -- is that the S? -- of Oklahoma.

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1      So that's UCO and Southwestern State.  I'm not sure if
2  there were others mentioned.
3      If you were one of those who gave that answer, would you
4  raise your hand?
5          PROSPECTIVE JUROR ROTH:  What about USAO?
6          THE COURT:  USAO?
7          MR. YOUNG:  No.
8          MS. COFFEY:  No.
9          THE COURT:  No.
10         PROSPECTIVE JUROR ROGERS:  What about OCU?
11         THE COURT:  No.
12         PROSPECTIVE JUROR ROGERS:  It's private; right?
13         THE COURT:  No.  It's private, yeah.
14      So, Mr. Payton, Ms. Fields, and Ms. Norton, none of you
15  attended Southeastern or I would have heard that.
16      Do you understand that the Regional University System of
17  Oklahoma, which supervises those universities you went to, is
18  a defendant in this case, along with Southeastern State?  Not
19  Southeastern State.  I'm showing my age, as I do so often.
20  I'm sorry.
21      Will that make it difficult for any of you to be fair and
22  impartial knowing that you were educated kind of generally by
23  the same group that's a defendant here today?
24         PROSPECTIVE JUROR PAYTON:  No.
25         PROSPECTIVE JUROR FIELDS:  No.

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1          PROSPECTIVE JUROR ROGERS:  I did go my first year to

2   Northwestern Oklahoma State University in Alva.

3          THE COURT:  Okay.  I'll include you in that

4   question.

5      Will any of you find it difficult to be fair because the

6   Regional University System of Oklahoma is a defendant in this

7   case?

8          PROSPECTIVE JUROR PAYTON:  No.

9          PROSPECTIVE JUROR FIELDS:  No.

10         PROSPECTIVE JUROR ROGERS:  No.

11         PROSPECTIVE JUROR NORTON:  No.

12         THE COURT:  At this time, I'm going to do two

13  things:  I am going to let those of you still in the courtroom

14  seats go.  I can't believe we didn't call any more of you up

15  here than one.

16     You go with my true appreciation for your willingness to

17  be jurors in our court, and I hope that you will yet have an

18  opportunity.

19     I know there will be a jury selection this afternoon.  So

20  I'm not letting you go from the building but go from this

21  courtroom to return to the jury assembly room for further

22  instructions.  I truly thank you very much.

23     (Remaining prospective jurors not in the jury box

24  excused.)

25         THE COURT:  The second thing I'm going to do is let

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1   you have a short break.  I don't want you to go smoke

2   somewhere.  You don't have that much time.  I want you to be

3   back in your seats right here in the courtroom at 10 till.

4        So there are restrooms in that hall out there.

5        They're at both ends, aren't they?

6             THE CLERK:  No.  I think they're just in the middle.

7             THE COURT:  In the middle.  I haven't been in that

8   hall, I bet, in 15 years.  I'm not sure what's out there.

9   Anyway, there are restrooms out there.

10       If you're in bad need, you can run down to the jury

11  assembly room and use the facilities down there, get a Coke

12  or –– you don't have time.  Ten minutes.

13       While you're gone, you may not discuss the case among

14  yourselves or with anyone else or permit anyone to discuss it

15  with you.

16       There are lots of people in the courtroom.  All of you

17  have to help make that true on occasions like this where we're

18  all going to be mixing out in the same corridor and in the

19  same bathroom.

20       So don't discuss the case.  I'm now going to give you

21  until eight minutes till.  If you don't want to go anywhere,

22  just stay where you are.  We'll be in recess.

23       (Recess had from 10:41 a.m. to 10:51 a.m.)

24             THE COURT:  Counsel come up.

25       You–all can stand, stretch, talk.  Don't leave.

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1        (The following proceedings were had at the bench and out
2   of the hearing of the jury.)
3            THE COURT:  Did my follow-up resolve your challenges
4   to the directional university people?
5            MS. GALINDO:  It did, Your Honor.  Thank you so
6   much.
7            THE COURT:  All right.
8        Plaintiff's first.
9        And, by the way, we're just going to do two preemptories
10  each.  We will have a jury of eight.  With the case starting
11  next week and going so long, I want at least two alternates.
12       So as you-all are aware, I'm sure, whoever is left is the
13  jury.  There are no alternates, but we're going to have eight.
14           MS. GALINDO:  I apologize, Your Honor.  We had
15  thought there were three.  Our research --
16           THE COURT:  Oh, I'm sorry.  I should have told you.
17           MS. GALINDO:  My sincere apologies.
18       Your Honor, Frangione would be our first.
19           THE COURT:  No. 10?
20           MS. GALINDO:  Yes.
21           THE COURT:  Defendant's first?
22           MR. JOSEPH:  That would be No. 9, Loren Pascual.
23           THE COURT:  Plaintiff's second and final?
24           MS. GALINDO:  Waller.
25           THE COURT:  No. 11.

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1          Defendant's second and final?

2                  MR. JOSEPH:  No. 13, Beverly Mullins.

3                  THE COURT:  Okay.  Thank you.

4          (The following proceedings were had in open court with

5     all parties present and within the hearing of the jury.)

6                  THE COURT:  The jury in this case will consist of

7     the following eight people:

8          Ms. Taylor, Ms. Roth, Mr. Payton, Ms. Hall, Ms. Fields,

9     Mr. Mallory, Ms. Norton, Ms. Harned, Ms. Rogers, and

10    Ms. Morse.

11         If I did not call your name, I will excuse you now to go

12    to the jury assembly room for further instructions.  Again, I

13    really appreciate your willingness to serve.

14         (Nonselected prospective jurors excused.)

15                 THE COURT:  Ms. Rogers, would you move down?

16    Ms. Morse, follow her down.

17                 PROSPECTIVE JUROR ROGERS:  This way?

18                 THE COURT:  Yes.  I want to make you a smaller

19    target.

20         Let's see.  I need -- how many people do I have here?

21    Oh, sorry.  I messed up.

22         Please come forward, Counsel.

23         (The following proceedings were had at the bench and out

24    of the hearing of the jury.)

25                 THE COURT:  I am so sorry.  I just can't add

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

```
 1   anymore.  I'm sorry.  You did get three each.
 2        In my defense, it's been since June since I've picked a
 3   jury, and I'm rusty.
 4        So who's No. 3?
 5            MS. GALINDO:  Roth, Your Honor.
 6            MR. JOSEPH:  What number is that?  I'm sorry.
 7            MS. GALINDO:  No. 2.
 8            THE COURT:  No. 2.
 9        And for you?
10            MR. JOSEPH:  No. 8, Your Honor, Paula Harned.
11            THE COURT:  Okay.  Thank you.  Sorry.
12        (The following proceedings were had in open court with
13   all parties present and within the hearing of the jury.)
14            THE COURT:  When I tried to seat you, I realized I
15   hadn't had them excuse enough of you.  There are two more
16   gone.  That is Ms. Harned and —— let's see, who's new on
17   this? —— Ms. Roth.  So you're excused to return to the jury
18   assembly room as well.
19        Now, Mr. Payton, if you'll move down, and everybody
20   follow him down except Mr. Mallory and Ms. Norton.  If you'll
21   take the last two on the front row.
22        Do any of you have difficulty hearing so that you need to
23   be placed closer to the witness stand, which is right here?
24        (No response in the affirmative or negative by
25   prospective jurors.)
```

Case 5:15-cv-00324-C   Document 269   Filed 12/20/17   Page 48 of 52

48

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

 1          THE COURT:  You have been selected to sit as jurors

 2  in this cause.  I am not going to have you sworn in or give

 3  you any preliminary instructions until we come back on Monday

 4  morning.

 5          I am going to, however, instruct you not to discuss this

 6  case or permit others to discuss it with you.  Do not do any

 7  independent research.  I want to say that again maybe five

 8  times.

 9          In this day of Google and information available online,

10  you can't go look anybody up or anything or do some research

11  about the issues.

12          I think -- if you understand how important it is that the

13  decision you make in this case has to be based only on the

14  evidence you hear in the courtroom from the mouths of

15  witnesses or from the documents and other things that are

16  admitted into evidence.

17          If one of you goes out and learns something that nobody

18  else knows, it's -- no one here knows to rebut it, for one

19  thing, and it may be totally inaccurate, for another thing.

20  So don't do it.

21          It is very important that you not make any independent

22  research on anything to do with this case; not the lawyers,

23  not the issues, nothing.

24          It may impact the verdict in this case and require that

25  it be retried, for one thing.  So just don't do it.  Don't do

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1    it.

2         That's the same reason that you're not to talk about it.

3    Because once you start talking about it, you'll start making

4    up your mind, whether you think you are or not, and even

5    before you've heard any evidence or not.

6         I will let you talk about the process, what happens in

7    the courtroom, what it looks like, what people do, and that

8    sort of thing.  Just don't talk about the issues or the

9    evidence once it starts coming in.

10        I am going to give you —— I'm not.  Linda is going to

11   give you a card with a phone number.  It tells you to call on

12   Friday.  It's very important that you call because if there

13   are any changes to our schedule, this call may save you a lot

14   of time and trouble that you didn't need to go to.

15        Friday is a holiday, we realized after she'd filled this

16   out, but it will be on this —— it's automated.  It's an

17   automated message, so it will still be here on Friday, whether

18   we're here or not, but it will also be here Thursday if you

19   want to call a day early.  If you don't get a message, then

20   call back on Friday.

21        Anything from counsel before I excuse the jury?

22             MS. GALINDO:  Nothing further, Your Honor.

23             THE COURT:  You go home as good citizens.  Be proud

24   of yourselves, at least as long as you come back on Monday.

25        Throughout the trial —— after the trial, you will have a

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1   room across the hall as your jury deliberation room.  Now it

2   will be your break room.

3       You don't have to stay there, but in order to make my

4   instruction easier to follow, keeping everyone else on that

5   hall and you in this back hall makes it a lot easier.

6       So I'm going to have you follow Jeff Lynch, who you will

7   see more of, into that room so you'll know where it is.  Then

8   he'll take you to the elevator so you know how to get there.

9       Very important.  When you come in Monday morning, don't

10  come up to this courtroom or even that room.  Stay in the jury

11  assembly room until we call for you.  That will be true every

12  morning and some other times as I tell you.

13      I'm going to repeat it because somebody always gets it

14  wrong.  Don't come back to this courtroom.  Go to the jury

15  assembly room Monday morning.

16      Be there in time for a nine o'clock start, which means a

17  few minutes early.  They panic if you're not there.  So come

18  early, have a cup of coffee, and we will get started at nine

19  o'clock, and I'll see you then.  Thank you very much.

20          PROSPECTIVE JUROR TAYLOR:  So we need to come in --

21  we need to be here at 9:00?

22          THE COURT:  By 9:00, but not here.

23          PROSPECTIVE JUROR TAYLOR:  I know.  I meant just

24  there.

25          THE COURT:  There, yeah.

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

 1            (Jury exits courtroom.)

 2            THE COURT:  Do you have a time for Judge Goodwin, or

 3    are you just going as soon as you finish here?

 4            MS. COFFEY:  He indicated 1:00 p.m., Your Honor.

 5    Now it's going to be Judge Jones.

 6            THE COURT:  I wondered if somebody else was going to

 7    cover.

 8        Well, you've heard me tell them about the holiday on

 9    Friday.  If you don't get an announcement to me by, say, noon

10    on Thursday, I will probably assess the costs of the jury to

11    you if you ultimately settle after that.

12        So make sure you get it done before noon, or at least get

13    us told if it's done before noon on Thursday.

14        Is there anything else I can do for you?

15        (No response from all counsel.)

16            THE COURT:  We'll be adjourned.

17        (Adjourned at 11:02 a.m.)

18

19

20

21

22

23

24

25

Voir Dire – Tudor v. SOSU, et al.
November 8, 2017

1                    REPORTER'S CERTIFICATE

2

3          I, SHERRI GRUBBS, Federal Official Court Reporter in

4    and for the United States District Court for the Western

5    District of Oklahoma, do hereby certify that pursuant to

6    Section 753, Title 28, United States Code that the foregoing

7    is a true and correct transcript of the stenographically

8    reported proceedings held in the above-entitled matter and

9    that the transcript page format is in conformance with the

10   regulations of the Judicial Conference of the United States.

11

12          Dated this 20th day of December, 2017.

13

14          /S/ SHERRI GRUBBS_____

15          SHERRI GRUBBS, RPR, RMR, RDR, CRR
            State of Oklahoma CSR No. 1232.
16          Federal Official Court Reporter

17

18

19

20

21

22

23

24

25