## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

RACHEL TUDOR,

                 Plaintiff,

v.

SOUTHEASTERN OKLAHOMA STATE
UNIVERSITY, and THE REGIONAL
UNIVERSITY SYSTEM OF
OKLAHOMA,

                 Defendants.

**Case No. 15-cv-324-C**

## DEFENDANTS' BRIEF ON THE MEASURE OF
## DAMAGES AWARDED BY THE JURY

Pursuant to the Court's April 13, 2018 Order [Doc. 287] regarding briefing on the measure of damages awarded by the jury, Defendants, Southeastern Oklahoma State University, ("SEOSU"), and The Regional University System of Oklahoma ("RUSO"), (collectively " Defendants"), Defendants submit the following:

## PROPOSITION I: THE STATUTORY CAP MUST BE APPLIED TO THE COMPENSATORY DAMAGES AWARD.

The jury awarded damages to Plaintiff in the amount of $1.165 million. This award must be reduced pursuant to 42 U.S.C. § 1981a, which dictates the types of damages recoverable for employment discrimination, as well as the statutory caps on certain types of damages.

42 U.S.C. § 1981a provides in part:

(b) Compensatory and punitive damages[1]

---

[1] As a government agency, Defendants are exempt from punitive damages in Title VII cases. 42 U.S.C. § 1981a(b)(1).

...

> (3) Limitations: The sum of the amount of compensatory damages awarded under this section [42 U.S.C. §1981a] shall not exceed, for each complaining party –
>
>> ...
>> (D) in the case of a respondent who has more than 500 employees in each of 20 calendar weeks in the current or preceding calendar year, $300,000.[2]

Thus, pursuant to 42 U.S.C. § 1981a(b)(3)(D), the jury award for compensatory damages must be reduced to the statutory maximum of $300,000. *Cadena v. The Pacesetter Corp.*, 224 F.3d 1203 (10th Cir. 2000). This represents a ceiling for Plaintiff's compensatory and nonpecuniary damages. As discussed in a subsequent section, the jury award would be excessive even if capped at $300,000, and thus, should be reduced below the $300,000 maximum.

Compensatory damages may include future pecuniary losses and various nonpecuniary losses, but shall not include back pay. 42 U.S.C. § 1981a(b)(2); 42 U.S.C. § 1981a(b)(3). The jury here did not specify the type of damages awarded. The jury did not categorize any damages as compensatory or back pay damages, but merely gave a lump sum damages award of $1.165 million. In light of the brief period in which Plaintiff was actually unemployed, and the lack of any substantial testimony regarding her unemployment, the jury's award appears on its face to represent

---

[2] For the limited purpose of this matter, Defendants acknowledge they have more than 500 employees.

compensatory damages, and nothing else.[3] Thus, the application of the statutory cap requires a reduction of the entire jury award to an amount not greater than $300,000.

## A.     Backpay

"Back pay is not punitive." *Comacho v. Colorado Elec. Tech. Coll., Inc.*, 590 F.2d 887, 889 (10th Cir. 1979), *citing Pearson v. Western Electric Co.*, 542 F.2d 1150 (10th Cir.). Back pay for a Title VII violation is calculated from the date of wrongful termination to the end of trial. *Wulf v. City of Wichita*, 883 F.2d 842, 871 n.37 (10th Cir.1989). In situations where a plaintiff earns wages from a subsequent employer prior to trial, the Court may consider those circumstances, and deduct those earnings from a calculation of back pay; and any amount of back pay awarded to a Title VII plaintiff is committed to the sound discretion of the district court. *Godinet v. Mgmt. & Training Corp.*, 56 F. App'x 865, 871 (10th Cir. 2003).

Plaintiff contends a portion of the jury award constituted back pay, which is not subject to the statutory cap. Defendants disagree, in light of the complete absence of any evidence to support an award of back pay. There is no evidence to support a conclusory finding that the jury decided to award back pay.  The Tenth Circuit has held that where a jury was asked to make a general determination of Title VII damages, which could have included back pay, emotional pain and suffering, and loss of enjoyment of life, it is error for a court to find the jury's award included an award for back pay.  Instead, the entire award should be treated as compensatory damages,

_____

[3] Plaintiff intentionally limited evidence at trial on the topic of her unemployment, in order to conceal from the jury her employment with, and ultimate termination from, Collin College.

subject to the damages cap. *Nelson v. Rehabilitation Enterprises*, 124 F.3d 217, 1997 WL 476111 (10th Cir. 1993).

However, in the event the Court speculates that the jury meant to award back pay to Plaintiff, the Court must then answer the dispositive question of what amount of the jury award was intended as back pay, and is thus not subject to the $300,000 statutory cap.  If following this approach, the Court should limit Plaintiff's back pay award to no more than one year's salary, *i.e.* the one school year in which Plaintiff was not employed. This year of unemployment resulted from Plaintiff's refusal to search for a job before she concluded her employment at Southeastern, despite her knowledge for a full year that she would not be returning to Southeastern in the Fall 2011.

The Back Pay Damages instruction, Jury Instruction No. 15 [Doc. 257, p. 26] set forth the strict parameters of back pay potentially awardable to Plaintiff. The jury was instructed that it could consider the earnings Plaintiff proved she would have been entitled to if her employment had not ended, measured from the time her employment with Defendants ended in May of 2011 until she began employment with Collin College in the Fall semester of 2012. It is undisputed that subsequent to her separation from SEOSU, Plaintiff found employment in the same field, teaching the same or substantially similar subjects and students, and at a similar or even better rate of pay. It is also undisputed that Plaintiff then ultimately lost that employment through her own job performance, and no fault of Defendants.

In its recent order awarding front pay [Doc. 286], this Court addressed and applied the factors to be considered in determining when and how much front pay should be awarded a plaintiff, as set forth by the Tenth Circuit in *Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 1000- 1001 (10th Cir. 2005). As part of its analysis, the Court calculated the potential back pay to which Plaintiff could have been entitled, and utilized this back pay calculation as a reasonable guidepost to determine an appropriate front pay award.

The Court relied upon information provided by Plaintiff, (which Defendants did not dispute), that Plaintiff's compensation, including benefits, was $51,463.52 per year at the time of her separation from Southeastern. The Court divided the annual income by twelve (12) to calculate a monthly salary of $4,288.63. The Court then multiplied that number by the fourteen (14) months Plaintiff was unemployed between her leaving Southeastern and beginning her employment with Collin College. This resulted in a calculation of front pay of $60,040.77, based on the empirical evidence of Plaintiff's demonstrated ability to secure similar or better employment in a given amount of time, coupled with her failure to stay employed.

Defendants contend that none of the jury award represents back pay, but accept, as a reasonable calculation of back pay, the methodology used by the Court in its determination of an appropriate amount of front pay to award Plaintiff. This amount represents the absolute maximum amount of the damages award that could possibly qualify as back pay. Thus, the most liberal application of the 42 U.S.C. § 1981a(b)(3)(D) statutory cap would result in a jury award of $360,040.77. However,

the complete lack of evidence to support any award of back pay also supports placing some limit on this absolute maximum, if the Court determines some award of back pay is appropriate.

**PROPOSITION II:    COMPENSATORY    DAMAGES    AWARD    WAS EXCESSIVE IN RELATION TO PLAINTIFF'S INJURY.**

      **A.    Even without a statutory cap, a $1.165 million damages award is excessive and punitive because the jury found no hostile work environment and Plaintiff produced no medical evidence for vague claims of distress.**

If the Court decides not to lower the $1.165 million compensatory damages award because of the Title VII statutory cap, it should still significantly reduce the amount. Cap or no cap, $1.165 million is clearly excessive and not backed by substantial evidence, essentially making it an unlawful punitive award.

In the Tenth Circuit, a district court can set aside an entire verdict if the damages awarded by the jury are "so excessive as to shock the judicial conscience and [] raise an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial." *Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152, 1168 (10th Cir. 1981). Defendants do not read the Court's April 13th pre-judgment order, however, to be asking for arguments contesting the verdict; rather, the order speaks of the proper "measure" of damages, and whether or not the jury's decision warranted the awarded "amount." [Doc. 287]. Thus, Defendants will reserve arguments against the verdict itself for post-judgment motions.

Dismissing a verdict in its entirety is not the only remedy the Tenth Circuit allows in this situation, however. Where a court concludes that a damages award was

excessive, it may also order a remittitur; *i.e.* a lower damages award. *Id.* Of course, remittitur arguments can be made post-judgment, as well, but Defendants understand the Court's April 13th order to request those types of arguments now, too.

"The federal statute that authorizes punitive damages in Title VII cases expressly exempts 'a government, government agency or political subdivision.' *Livshee v. City of Woodward*, No. CIV-12-1411, 2013 WL 5942277, at *3 (W.D. Okla. Nov. 6, 2013) (quoting 42 U.S.C. § 1981a(b)(1)). Thus, against Defendants in this case, Title VII only permits compensatory damages "for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981(a)(b)(3). Punitive damages are not allowed.

Following its verdict here, the jury awarded Plaintiff $1.165 million. To determine whether this massive amount was appropriate, the Court's "relevant inquiry is whether the compensatory award was excessive *in relation to the injury—* an injury consisting [in part] of the emotional distress suffered by the plaintiff." *Malandris*, 703 F.2d at 1169 (emphasis added). This inquiry should take into account the "whole of the evidence," including the severity of the harm and any "medical testimony" produced. *Id.* at 1170. A "review of awards granted in other comparable cases" can be helpful, but it is not dispositive. *Wulf*, 883 F.2d at 875. At the end of the day, the Court must determine whether substantial evidence supports the compensatory award. *Id.* at 874; *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1114 (10th Cir. 2001). The evidence must be viewed in the light most favorable to the prevailing party. *Id.*

Two critical and undisputed facts compel the conclusion that the jury's $1.165 million award is excessive and actually punitive here: (1) the jury found no hostile work environment; (2) Plaintiff put forth no "medical testimony" or medical evidence whatsoever to support a claim of emotional or physical distress.

The Court instructed the jury that it should find a hostile work environment existed for Plaintiff if, by a preponderance of the evidence, it found that there had been, among other things, unwelcome harassment or inappropriate comments based on Plaintiff's gender that were "sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile or abusive." [Doc. 247, at pp. 14-15]. The jury found that there was no hostile work environment. This verdict—that Southeastern did *not* subject Plaintiff to a hostile environment—commonsensically counsels toward a compensatory damages award far lower than $1.165 million. A recent case in the Central District of California illustrates this point well. *See United States ex rel. Macias v. Pac. Health Corp.*, CV 12-00960, 2016 WL 8722639 (C.D. Cal. Oct. 7, 2016). There, a whistleblower was retaliated against by her employer and "became withdrawn from friends and family, suffered from anxiety and depression, had nightmares, and moved to Kansas." *Id.* at *12. As such, she requested half a million dollars for emotional distress. *Id.* The court declined to grant this exorbitant amount, explicitly contrasting her case with "[c]ases of sexual harassment and hostile work environment," which "are likely to generate much higher emotional distress damages awards [than claims of whistleblower retaliation] because of their personal and highly offensive nature." *Id.* (citation

omitted). Specifically, the court held that "$500,000 in emotional distress damages is excessive and $35,000 is more appropriate" where, among other things, "Plaintiff was never physically threatened [and] did not face sexual harassment." *Id*.

In the present case, the hostile work environment verdict is also significant because it makes Defendants the prevailing party on this issue. This means that the facts underlying the hostile work environment claim must be interpreted in the light most favorable to *Defendants*, and not Plaintiff. *See Hampton*, 247 F.3d at 1114. Unfortunately, there is no bright line that can be drawn between facts defeating Plaintiff's hostile work environment claim—which must be viewed favorably to Defendants—and the facts supporting Plaintiff's discrimination and retaliation claims. What is clear, however, is that the collective universe of facts in this case simply cannot be interpreted against Defendants across the board, as that would unjustly allow Plaintiff to recover damages on a claim Plaintiff expressly lost. If anything, something near the opposite is true. Hostile work environment claims are highly fact-intensive, by nature, and it was certainly Plaintiff's contention throughout trial that virtually *all* of the facts demonstrated a hostile work environment. The jury disagreed. Given this, Plaintiff should not be allowed to claim that the jury took Plaintiff's side on all factual disputes. It did no such thing.

To the extent that the Court deems it necessary to divide the facts relating to a hostile work environment and those relating to discrimination and retaliation, it would seem that a (blurry) line could be drawn somewhere during Plaintiff's tenure process in late 2009. Events taking place prior to that, but after Plaintiff's transition

in 2007, are plainly more related to the hostile work environment claim, whereas certain events in 2010 and 2011 specifically surrounding the tenure review process may have a more direct connection to the claims of tenure discrimination and retaliation. Thus, in supporting the damages award Plaintiff cannot rely on favorable interpretations of the facts in 2007. For example, one lynchpin for Plaintiff's hostile work environment claim was the alleged restriction placed on Plaintiff by Cathy Conway in 2007 regarding bathroom use, dress, and makeup. Given the jury's rejection of the hostile work environment claim, it is manifest that the jury did not take Plaintiff's side in this dispute. At minimum, it would be inappropriate for the Court to assume that this credibility question was resolved definitively in Plaintiff's favor, and as a result to allow alleged emotional and physical distress from these restrictions to form the basis for upholding Plaintiff's huge compensatory award.[4]

That said, even some post-2009 facts cannot be used to support Plaintiff's assertions of emotional distress, either. For instance, Mindy House's testimony that various Southeastern administrators said negative things about Plaintiff's transgender identity, outside the presence of Plaintiff, cannot be used to buttress emotional distress claims because there is simply no evidence in the record that Plaintiff was ever made aware of those statements prior to the testimony proffered by Ms. House at trial. In short, support for Plaintiff's enormous award must be found

---

[4] Notably, even if the Court does take into account the evidence from 2007, Plaintiff testified that before the tenure process began in 2010, "overall, it was a pretty good quality of life," (Trial Transcript Vol. I, p.125) and that Plaintiff's colleagues and students were unanimously supportive. (*Id*. at p.41, 50, 118-19). This is not indicative of emotional or physical distress.

elsewhere than Cathy Conway's telephone call or Mindy House's overheard conversations.

This leads to the second undisputed point: Plaintiff provided no medical evidence to buttress the $1.165 million damages award. Plaintiff testified to having experienced "chronic insomnia" and to being "extremely depressed," but called no medical expert or health practitioner to corroborate this. Plaintiff offered zero evidence from psychiatric or psychological health professionals, or from any kind of counselor. Indeed, aside from a brief mention of wisdom teeth being removed—which is also unsubstantiated by any medical evidence in the record—Plaintiff has never claimed to have sought treatment for anything during this process. This may not mean Plaintiff is barred from recovering emotional distress damages, *see Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1417 (10th Cir. 1997) ("Such [medical] testimony is one suggested method of proving emotional damages but is not the sole dispositive requirement."), but it should factor significantly in the Court's determination of whether Plaintiff's colossal compensatory damages award was based on actual, substantial evidence. *See Malandris*, 703 F.2d at 1170-71 ("Considering the whole of the evidence, including ... *the medical testimony of present and permanent mental injury to the plaintiff* ... we are satisfied that the compensatory award itself is not so plainly excessive." (emphasis added)); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 180 (4th Cir. 2001) ("Given Fox's testimony as to the specific nature of his 'emotional pain, suffering, inconvenience, mental anguish, [and] loss of enjoyment of life' ... *and the corroboration of his claim by medical professionals*,

we cannot conclude that the $200,000 award was 'grossly excessive or shocking to the conscience.'" (emphasis added)); *Vadie v. Miss. State Univ.*, 218 F.3d 365, 375–78 (5th Cir. 2000) ("On this record, *which is devoid of any medical evidence supporting any injury* … an award greater than $10,000 would be excessive." (emphasis added)).

In the end, the enormous damages award here is based on little more than Plaintiff's own self-serving testimony about distress and harm, testimony that was at times ambiguous, vague, and incoherent. And, again, because the jury sided with Defendants on Plaintiff's hostile work environment claim, the Court is not necessarily required to assume that the jury found Plaintiff's testimony credible in all respects. At minimum, this combination of factors should cause the Court, in exercising its wide discretion on these issues, to drastically lower the amount of compensatory damages awarded. Otherwise, if left to stand, the $1.165 million "looks like an award of punitive damages, and it is clear from the law and the record that such an award is inappropriate in this case." *Park v. Shiflett*, 250 F.3d 843, 854 (4th Cir. 2001).

## B. For the same reasons, a $300,000 award is also excessive and unlawfully punitive under Title VII and prior case law.

Even if Title VII's statutory cap is enforced here, the compensatory damages award should still be reduced well below $300,000 given the lack of evidence presented by Plaintiff on mental and physical distress. *Wulf* is probably the most illustrative Tenth Circuit precedent supporting this point. *See* 883 F.2d 842.

In *Wulf*, the plaintiff (Wulf) alleged that he had been fired for exercising his right to free speech. *Id.* at 855. Like the present case, *Wulf* involved a mixed verdict: the district court found no equal protection violation or property interest deprivation,

but it did find a due process liberty interest deprivation and a First Amendment violation; it then awarded Wulf $250,000 for mental anguish and distress. *Id.* at 855-56. Much like our Plaintiff, Wulf testified "that his job loss was 'very stressful,' that he was angry, depressed, scared and frustrated." *Id.* at 875. Moreover, similar to Professor Meg Cotter-Lynch (Plaintiff's avowed personal friend) in the present case, Wulf's wife testified "he was under 'tremendous emotional strain' and that they experienced significant financial difficulties." *Id.* Wulf provided no other evidence, however, and the Tenth Circuit ultimately reversed:

> While we are aware that it is rarely appropriate for an appellate court to reduce the trial court's determination as to the proper amount of damages, and while comparisons with other cases are not dispositive, the award of $250,000 in this case is clearly excessive in view of the evidence presented. Our review of the record, informed by a review of awards granted in other comparable cases, indicates that the award should have been no *greater* than $50,000.

*Id.* (emphasis in original).

This holding is echoed in various decisions from other circuits. In a Title VII mixed verdict case, for example, the Fourth Circuit in *Hetzel v. County of Prince William* reversed an award of $500,000 for emotional distress allegedly caused by the defendant's retaliatory acts where the award was "based almost entirely on Hetzel's own self-serving testimony concerning stress and headaches." 89 F.3d 169, 170-71 (4th Cir. 1996).[5] In doing so, the court factored in the mixed verdict, that Hetzel was

---

[5] *See also Saleh v. Upadhyay*, 11 F. App'x 241, 263 (4th Cir. 2001) ("Mbagwu never sought medical or psychological care for his stress and insomnia. … Mbagwu's testimony, standing alone, simply does not support an award of $150,000.00 for emotional distress.")

not physically injured, and that she had not sought care from a physician. *Id.* at 172. Moreover, the Fourth Circuit noted that "[m]uch, if not all, of Hetzel's claimed distress was actually caused by her erroneous belief that she was the victim of invidious discrimination"—which was one of the claims that had been decided against her. *Id.* at 171-72. The same is true here, of course, in that at least some of the claimed emotional distress comes from Plaintiff's mistaken belief she was forced to endure a hostile work environment for four years, which the jury found did not actually exist.

The Fifth Circuit *Vadie* opinion, mentioned above, is yet another mixed verdict case, also involving a university professor's attempts for promotion. *See* 218 F.3d 365. There, Dr. Vadie brought a Title VII action against Mississippi State University, alleging retaliation and racial discrimination. *Id.* at 367. The jury found in his favor on both claims and awarded him $350,000 in compensatory damages for emotional distress, a number which the district court reduced to $300,000. *Id.* at 370. On appeal, the Fifth Circuit threw out the discrimination finding (thereby creating a mixed verdict) and then drastically lowered the compensatory damages award:

> In this case, Dr. Vadie's own testimony is the sole source of evidence on emotional injury. … [N]one of Dr. Vadie's testimony was corroborated by medical evidence or any other witness …. Dr. Vadie's testimony was … insufficient to support damages of the magnitude awarded here. … On this record, which is devoid of any medical evidence supporting any injury and which is devoid of any specific evidence whatsoever supporting Dr. Vadie's broad assertions of emotional injury, we find that an award greater than $10,000 would be excessive.

*Id.* at 377-78.

There are multiple other cases illustrating these points. *See, e.g., Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*, 130 F.3d 349, 357-58 (8th Cir. 1997) (reducing

emotional distress award from $150,000 to $50,000 where the victim of race discrimination suffered "vague and ill-defined" emotional and physical problems). As such, the import is clear: in a mixed verdict case, where the evidence of emotional distress produced was scant at best, and a hostile work environment was *not* found, it is inappropriate to award the statutory maximum of $300,000 in Title VII cases. That figure should be reserved for the most severe cases and most egregious violations, backed by the strongest evidence. *Cf. Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344, 1356 (7th Cir. 1995) ("[W]e do not think the case is so egregious that an award at 100 percent of what can legally be awarded ... is appropriate. In fact, given the much more egregious nature of some sex discrimination cases—the legion of 'quid pro quo' sexual harassment cases ... for example—we think the punitive damages must be reduced to a smaller figure."). This is not such a case, and the Court should lower Plaintiff's award well below $300,000 to align with the jury's finding of no hostile work environment and the actual evidence produced (or not produced) by Plaintiff.

## CONCLUSION

42 U.S.C. § 1981a(b)(3)(D) requires the jury's award to be reduced *at least* to the statutory maximum of $300,000. The damage award should be further reduced, well below $300,000, given the lack of evidence presented by Plaintiff on mental and physical distress and the jury's finding that there was no hostile work environment.

Respectfully submitted,

/s/ Dixie L. Coffey
**DIXIE L. COFFEY, OBA #11876**
**JEB E. JOSEPH, OBA #19137**
**KINDANNE JONES, OBA #11374**
**TIMOTHY M. BUNSON, OBA#31004**
Assistant Attorneys General Oklahoma
Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: 405.521.3921
Facsimile: 405.521.4518
Email: dixie.coffey@oag.ok.gov
Email: jeb.joseph@oag.ok.gov
Email: kindanne.jones@oag.ok.gov
Email: tim.bunson@oag.ok.gov
*Attorneys for Defendants Southeastern*
*Oklahoma State University and The Regional*
*University System of Oklahoma*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of May 2018, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Ezra Young
Law Office of Ezra Young
30 Devoe, 1a
Brooklyn, NY 11211-6997
Email: ezraiyoung@gmail.com
*Attorney for Plaintiff*

Marie E. Galindo
1500 Broadway, Ste. 1120
Lubbock, TX 79401
Email: megalindo@thegalindolawfirm.com
*Attorney for Plaintiff*

Brittany Novotny
NATIONAL LITIGATION LAW GROUP, PLLC
42 Shepherd Center
2401 NW 23rd Street
Oklahoma City, OK 73107
Email: bnovotny@nationlit.com
*Attorney for Plaintiff*

/s/Dixie L. Coffey
Dixie L. Coffey

~ 16 ~