IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

DR. RACHEL TUDOR,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Case No. 5:15-CV-00324-C
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
SOUTHEASTERN OKLAHOMA⠀⠀)
STATE UNIVERSITY,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
and⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
THE REGIONAL UNIVERSITY⠀⠀)
SYSTEM OF OKLAHOMA,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Defendants.⠀⠀⠀⠀)

**PLAINTIFF DR. RACHEL TUDOR'S
RESPONSE IN OPPOSITION TO
DEFENDANTS' BRIEF ON THE
<u>MEASURE OF DAMAGES AWARDED BY THE JURY</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................i

INTRODUCTION........................................................................1

I.    STATUTORY CAP SHOULD NOT BE APPLIED.................................2

      A. Waiver: Defendants Sat on Their Rights............................2

      B. Abandoned and Acquiesced:
         Defendants Created This Problem.................................4

      C. Defendants' Proposal Will Sow
         Seventh Amendment Violation.....................................7

      D. Award Cannot Be Remitted Below Maximum.....................12

II.    REMITTITUR OTHERWISE INAPPROPRIATE............................13

      A. Environmental claim does not support remittitur................13

      B. No "treating physician" requirement..............................14

      C. Award is neither excessive nor shocks conscience................15

III.    REMITTING AWARD WILL NOT MAKE TUDOR WHOLE.........................20

CONCLUSION........................................................................24

# TABLE OF AUTHORITIES

**Cases:**

*Baltimore & Carolina Line v. Redman,*
    295 U.S. 654 (1935)……………………………………………………7

*Bennett v. Longacre,*
    774 F.2d 1024 (10th Cir. 1985)…………………………………...11

*Bentley v. Cleveland Cnty. Comm'rs,*
    41 F.3d 600 (10th Cir. 1994)……………………………………………3

*Bland v. Burlington N. R. Co.,*
    811 F.Supp. 571 (D.Colo. 1992)………………………………....11

*Boyd v. Bulala,*
    877 F.2d 1191 (4th Cir. 1989)…………………………………...9

*Carter v. Sedgwick Cnty., Kan.,*
    36 F.3d 952 (10th Cir. 1994)…………………………………...24

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.,*
    532 U.S. 424 (2001)……………………………………..………......9

*Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.,*
    130 F.3d 349 (8th Cir. 1997)………………………………………18, 19

*Deters v. Equifax Credit Info. Servs., Inc.,*
    202 F.3d 1262 (10th Cir. 2000)……………………………2, 6, 12

*Dolene v. Flynn,*
    628 F.2d 1280, 1282 (10th Cir. 1980)…………………..……...22

*Dow v. Chemical Corp. v. Weevil-Cide Co., Inc.,*
    897 F.2d 481 (10th Cir. 1990)…………………………………...21

*EEOC v. Prudential Fed. Sav. and Loan Ass'n,*
    763 F.2d 1166 (10th Cir. 1985)…………………………………...24

*Feltner v. Columbia Pictures Television, Inc.*,
    523 U.S. 340 (1998)..................................................................11

*Fitzgerald v. Mountain States Tel. & Tel. Co.*,
    68 F.3d 1257 (10th Cir. 1995)....................................................16

*Fox v. Gen. Motors Corp.*,
    247 F.3d 169 (4th Cir. 2001)......................................................18

*Galloway v. United States*,
    319 U.S. 372 (1943)..................................................................11

*Hall v. Claussen*,
    6 Fed.Appx. 655 (10th Cir. 2001)................................................2

*Hetzel v. Prince William Cty.*,
    523 U.S. 208 (1998)..............................................................7, 18
    89 F.3d 169 (4th Cir. 1996)...................................................18, 19

*Hudson v. Smith*,
    618 F.2d 642 (10th Cir. 1980).....................................................16

*Kenworthy v. Conoco, Inc.*,
    979 F.2d 1462 (10th Cir. 1992).....................................................6

*Kloepfer v. Honda Motor Co., Ltd.*,
    898 F.2d 1452 (10th Cir. 1990).....................................................6

*Lockard v. Pizza Hut, Inc.*,
    162 F.3d 1062 (10th Cir. 1998)....................................................16

*Malandris v. Merrill Lunch*,
    703 F.2d 1152 (10th Cir. 1981)................................................15, 18

*McInerney v. United Air Lines, Inc.*,
    Fed.Appx. 709, 723 (10th Cir. 2011)..........................................17, 19

*Nelson v. Rehabilitation Enterprises of N.E. Wyo.*,
    124 F.3d 217, 1997 WL 476111 (10th Cir. 1997)................................6

*Northern Nat. Gas Co. v. Trans Pacific Oil Corp.*,
  248 Fed.Appx. 882 (10th Cir. 2007)...................................…..……….6

*Pals v. Schelpel Buick & GMC Truck, Inc.*,
  220 F.3d 495 (7th Cir. 2000).......................................................3, 6

*Perry v. Amtrak*,
  2013 WL 12071665 (W.D.Okla. 2013)........................….............21

*Pollard v. EI du Pont de Nemours & Co.*,
  532 U.S. 843 (2001) ...........................................................…....2

*Ramos v. Lamm*,
  713 F.2d 546 (10th Cir. 1983)......................................….............14

*Rancher v. Westlake Nursing Home Limited P'ship*,
  871 F.3d 1152 (10th Cir. 2017)...............................................…....2

*Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.*,
  571 F.2d 1144 (10th Cir. 1978)...................................…..............13

*Roberts v. Roadway Exp., Inc.*,
  149 F.3d 1098 (10th Cir. 1998).........................................…..........14

*Russo v. Ballard Med. Products*,
  550 F.3d 1004 (10th Cir. 2008).......................................................16

*Selah v. Upadhyay*,
  11 Fed.Appx. 241 (4th Cir. 2001)...........................................18, 19

*Slocum v. New York Life Ins. Co.*,
  228 U.S. 364 (1913)....................................................................8

*Smith v. Nw. Fin. Acceptance, Inc.*,
  129 F.3d 1408 (10th Cir. 1997)................................…....14, 18, 19

*United Inter. Holdings, Inc. v. Wharf (Holdings) Ltd.*,
  210 F.3d 1207 (10th Cir. 2000).......................................................21

*United States v. Smaldone*,
  485 F.2d 1333 (10th Cir. 1973)......................................................14

*United States ex rel Macias v. Pac. Health Corp.,*
　　2016 WL 8722639 (C.D.Cal. Oct. 7, 2016)……………………….........18

*Vadie v. Miss. State Univ.,*
　　218 F.3d 365 (5th Cir. 2000)……………………………………………18, 19

*Williams v. Pharmacia, Inc.,*
　　137 F.3d 944 (7th Cir. 1998)……………………………………………..2

*Wolfgang v. Mid-Am. Motorsports,*
　　111 F.3d 1515 (10th Cir. 1997)……………………...……………………21

*Wulf v. City of Wichita,*
　　883 F.2d 842 (10th Cir. 1989)………………………………….……17, 18

## Constitutions, Statutes, and Rules:

U.S. Const., amd. VII……………………………………………………*passim*

42 U.S.C. §1981a…………………………………………………....…*passim*

Fed.R.Civ.P. 8(c)…………………………………………………...…..3, 10

Fed.R.Civ.P. 50(a)…………………………………………………..……21

Fed.R.Civ.P. 50(b)…………………………………………………………21

## INTRODUCTION

Defendants's brief on damages (ECF No. 289) objects to the Court's proposal (ECF No. 287) to add Tudor's jury award to front pay on the premises that §1981a's statutory cap should be applied or the total award otherwise must be lowered to an unspecified sum below $300,000. Not so.

The cap should not be applied to the jury's award. Defendants repeatedly waived application of the cap and it is far too late now to invoke it as an affirmative defense. Defendants also repeatedly acquiesced to the cap not being applied in this case—their actions created this problem, they must now live with the consequences. Defendants' proposal to redress their self-inflicted problem would sow Seventh Amendment violations—total nonstarters. Even if the cap could be applied, precedent bars remitting the jury's award below the sum of the maximum capped ($300,000) and uncapped damages.

Remittitur is otherwise inappropriate. The jury's award is presumptively inviable, substantiated by evidence, and neither excessive nor shocking to judicial conscience. Moreover, in this case, any reduction of the jury's award, if not offset by reinstatement or substantial front pay, does an injustice and frustrates the purpose of Title VII. Ultimately, the final award entered, in combination with any other relief granted, must make Tudor whole and remittance does not serve that end.

## I.    STATUTORY CAP SHOULD NOT BE APPLIED

Defendants sat on their rights and now grieve a wholly self-inflicted injury. Despite being well-aware of the high stakes in this case and the fact that there are several kinds of Title VII damages, some capped by 42 U.S.C. §1981a some not,[1] Defendants sat on their rights and ended up creating a situation where it is impossible to apply the cap to the award the jury entered on a verdict form (ECF No. 262) Defendants approved. Defendants' brief, which was filed 164 days after the jury issued the award, beseeches the Court to overlook their waiver and acquiescence and also ignore the strictures of the Seventh Amendment. Ignore that invitation. The cap should not be applied under these conditions.

A.    Waiver: Defendants Sat on Their Rights

Title VII's statutory cap, 42 U.S.C. § 1981a, is not automatically applied to jury awards. *See Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1273 (10th Cir. 2000) (§1981a "establishes regime whereby the jury will set the damages, without reference to the cap"). The cap is an affirmative defense which must be timely pled or else it is waived. *Rancher v. Westlake Nursing Home Limited P'ship*, 871 F.3d 1152, 1167 (10th Cir. 2017) (statutory cap is

---

[1] **Subject to cap:** 42 U.S.C. § 1981a(b)(3) ("emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses"). **Not subject to cap:** 42 U.S.C. § 1981a(b)(2) (backpay, prejudgment interest on backpay); *Pollard v. EI du Pont de Nemours & Co.*, 532 U.S. 843, 848 (2001) (front pay); *Hall v. Claussen*, 6 Fed.Appx. 655, 679 (10th Cir. 2001) *citing with approval Williams v. Pharmacia, Inc.*, 137 F.3d 944 (7th Cir. 1998) (lost future earnings not subject to cap and are distinct from front pay; lost future earnings are loss to professional reputation due to discrimination, which results in diminished earning capacity over time).

affirmative defense that is waived where Defendant did not raise it in pleadings, as required by Fed.R.Civ.P. 8(c), and otherwise did not seek to invoke it "at any point before the trial was completed"); *Bentley v. Cleveland Cnty. Comm'rs*, 41 F.3d 600, 604–05 (10th Cir. 1994) (county that failed to raise $100,000 statutory cap as affirmative defense in discrimination suit until after $157,000 verdict was rendered forfeited cap). *See also Pals v. Schelpel Buick & GMC Truck, Inc.*, 220 F.3d 495, 500 (7th Cir. 2000) (Easterbrook, J.) (denying remittitur of a $1,050,000 jury award in ADA case where employer waived and otherwise acquiesced to non-application of §1981a cap by agreeing to verdict form that made it impossible to distinguish between capped and uncapped damages).

Defendants repeatedly waived application of the cap. At the onset of this case, Defendants filed six separate answers, none of which pled the cap as an affirmative defense, as is required by Fed.R.Civ.P. 8(c). Defendants' answers reveal that they knew how to raise affirmative defenses—indeed, they set forth fourteen other discrete defenses—yet still elected to not raise the cap.[2] When given additional opportunities to raise the cap later on in this litigation,

---

[2] Southeastern Answer to DOJ Compl., ECF No. 21 at 13–14 (raising 14 other defenses); RUSO Answer to DOJ Compl., ECF No. 22 at 5–6 (same); Southeastern Answer to Tudor Compl., ECF No. 28 at 19–20 (same); RUSO Answer to Tudor Compl., ECF No. 29 at 20–21 (same); RUSO Answer to Tudor Compl. Count 1, ECF No. 38 at 1 (incorporating by refence defenses in ECF No. 29); Southeastern Answer to Tudor Compl. Count 1, ECF No. 38 at 1 (incorporating by reference defenses in ECF No. 28).

Defendants continued to sit on their rights. In the Joint Pretrial Report, Defendants' did not raise the cap to what ultimately became Tudor's three successful claims.[3] Close in time, Defendants filed proposed jury instructions, including a special interrogatory and verdict form (ECF No. 196 at 32–33) that, even if adopted in their entirety, reflect that Defendants did not seek application of the cap since neither asked the jury to delineate damages in a way that would have permitted the Court to ascertain which damages were capped versus uncapped. This is the stuff of waiver.

## B. Abandoned and Acquiesced: Defendants Created This Problem

Defendants created the very problem they now grieve. But it was their responsibility to make sure the cap could be applied in this case. They abandoned and otherwise acquiesced to not applying the cap.

Tudor sought both capped and uncapped damages from the jury. The jury returned an omnibus verdict of $1,165,000, written on a form (ECF No. 262) Defendants approved. In the twilight of this litigation, Defendants now demand for the first time the right to scrutinize which of Tudor's damages are subject to the cap. Defendants know full-well there is no way to figure that out at this point. That is where Defendants' unctuous proposal comes into play. Defendants ask that the Court either construe the whole of the jury's

---

[3] *See* ECF No. 207 at 13–14 (expressly stating that 42 U.S.C. §1981a's cap applies to Tudor's hostile work environment claim, but not so stating it applies to Tudor's sex discrimination or retaliation claims).

$1,165,000 award as subject to the cap or ask the Court to apportion and relabel the award and remit as if the jury had applied those labels. Defendants' proposal is self-serving and otherwise fails to account for their role in creating this problem in the first place. It is also contrary to precedent.

Defendants unconvincingly argue that the ambiguity of the jury's award is anyone's fault but theirs. They blame the jury (ECF No. 289 at 2). (They reflexively try to blame Tudor, too.) But Defendants have only themselves to blame. Defendants shirked their responsibility and repeatedly acquiesced to a situation where there was no way for the Court to discern the kinds of damages comprising the jury's award. For example, Defendants' proposed special interrogatory and verdict form did not permit delineation of capped and uncapped damages (ECF No. 196 at 32–33), so if that one had been used this same problem would exist. After the Court rejected Defendants' proposals and presented the special verdict form for review, Defendants did not seek amendments that would allow for application of the cap. Once the jury returned its award—a figure that is plainly more than the statutory cap—Defendants acquiesced by foregoing any opportunity to ask the Court to inquire of the jury how the damages should be apportioned before they were dismissed.

Because it is Defendants who seek the cap's application, it was incumbent upon them to ensure the verdict form allowed for appropriate application and otherwise required that they speak up before it was too late.

Defendants' acquiescence bars construing ambiguities in the verdict from to their benefit.[4] Thus, the Court cannot simply deem the whole of the award subject to the cap. Precedent supports that strong medicine. *See Northern Nat. Gas Co. v. Trans Pacific Oil Corp.*, 248 Fed.Appx. 882, 888 (10th Cir. 2007) ("Northern did not object to the Special Verdict Form after it was read and submitted to the jury or seek clarification of the verdict before the jury was dismissed. It cannot now assert the form was flawed."). Reason also supports it since "[w]hen lawyers fail to draw the court's attention to a preventable problem, they must bear the consequences of their forfeiture." *Pals*, 220 F.3d at 500 (waiver and acquiescence to non-application of §1981a in similar circumstances).

---

[4] Defendants' reliance on *Nelson v. Rehabilitation Enterprises of N.E. Wyo.*, 124 F.3d 217, 1997 WL 476111 (10th Cir. 1997) (unpublished) for the proposition that the Court *must* apply the cap to the whole award because the verdict form is ambiguous is misplaced. *Nelson* is an unpublished opinion and thus, pursuant to 10th Circuit Rule 32.1(A) "not precedential." At most, *Nelson* should be given only the weight due to its persuasiveness. That is precisely where Defendants stumble. *Nelson* sticks out of the ordinary body of cases like a sore thumb. *Nelson* minimizes damages, to the benefit of the discriminatory employer, an approach that cannot be reconciled with precedents requiring maximization of damages available to the employee where a cap is at issue. *See, e.g., Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1273 (10th Cir. 2000) (Title VII). *Nelson* is also irreconcilable with precedents requiring the party complaining of ambiguities in the verdict form—in this case, Defendants complain, not Tudor—to have taken steps to raise or cure the problem before the point of no return to get relief. *See, e.g., Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1468 (10th Cir. 1992) (waiver where party did not object to jury instruction or special verdict form and did not seek clarification of verdict before jury dismissed); *Kloepfer v. Honda Motor Co., Ltd.*, 898 F.2d 1452 (10th Cir. 1990) (waiver of right to challenge special verdict form where complaining party had opportunity to edit it and objections otherwise not raised before jury retired). Moreover, *Nelson* is impliedly unpersuasive to the 10th Circuit itself—since its issue it has not been cited by a panel for *any* proposition, let alone the one on which Defendants hand their hat.

## C. Defendants' Proposal Will Sow Seventh Amendment Violation

The jury, not the Court, was tasked with awarding damages in this case. The Court's role is a limited one—it may only apply the cap to a sub-set of damages designated by statute. That task is impossible here due to Defendants' waiver and acquiescence. Defendants' proposal, that the Court either deem the whole of the jury award as subject to the cap or decide anew what Tudor's damages are and then apply the cap to that sum, must be rejected because it runs afoul of the Seventh Amendment.

In our system, which is "the best yet devised" (ECF No. 267 at 871:15–16), Tudor had the right to request that her peers pass judgment on the events at Southeastern and value her injuries. *See Hetzel v. Prince William Cty., Va.*, 523 U.S. 208 (1998) (recognizing right to jury trial on claims and damages in Title VII context). Our nation and way of life is premised on the revolutionary notion that persons should be able to grieve important legal issues, like violations of statutorily protected civil rights, to their peers whom the Seventh Amendment vests with the power to redress injuries of local and, as is the situation here, national importance. Trial by jury must be protected and preserved. *Baltimore & Carolina Line v. Redman*, 295 U.S. 654, 659 (1935). Any actions that risk infringing Seventh Amendment rights must be substantially justified.

Up to present, Tudor's Seventh Amendment rights have been honored. Eight Oklahoman citizens were empaneled as jurors. The jury took in evidence over a five-day trial, followed the instructions agreed to by the parties, and carefully deliberated for several hours. Ultimately, the jury found liability on three of Tudor's four claims and, based on the evidence of her injuries, awarded Tudor $1,165,000 in compensation using the verdict form provided. This is exactly as the Seventh Amendment intended.

Defendants' insistence that the Court review evidence presented at trial and make determinations of damages independent of the jury's award so that a cap might be applied unconstitutionally collapses the separate spheres of court and jury. *See Slocum v. New York Life Ins. Co.*, 228 U.S. 364, 382 (1913) ("In the trial by jury, the right to which is secured by the 7th Amendment, both the court and the jury are essential factors. To the former is committed a power of direction and superintendence, and to the latter the ultimate determination of the issues of fact. Only through the co-operation of the two, each acting within its appropriate sphere, can the constitutional right be satisfied. And so, to dispense with either, or to permit one to disregard the province of the other, is to impinge on that right.").

Defendants' proposal also turns the Seventh Amendment on its ear insofar as it invites the Court to apply a cap under forbidden conditions. On its

face, the Seventh Amendment's Reexamination Clause forbids a judge from reexamining facts resolved by the jury:

> In suits at common law, . . . no fact tried by jury shall be reexamined in any Court of the United States, than according to the rules of the common law.

U.S. Const., amd. VII. In a case where the jury is the finder of fact and it awards damages—some subject to cap and some not—the Reexamination Clause permits remittitur premised on the cap, but only if certain constitutional safeguarded are abided. To wit, the award must be labeled in such a way that distinguishes damages subject and not subject to the cap. This is so because for the purposes of the Reexamination Clause: (a) <u>damages subject to the cap</u> are not facts decided by the jury whereas (b) <u>damages not subject to the cap</u> are facts decided by the jury. *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 437 (2001) ("measure of actual damages suffered . . . presents question of historical or predictive fact" within ambit of Reexamination Clause); *Boyd v. Bulala*, 877 F.2d 1191, 1196 (4th Cir. 1989) (discrete damages subject to statutory cap permissibly remitted on theory that legislature may limit damages recoverable by statute and in doing so removes those damages from the strictures of Seventh Amendment protection). So long as those safeguards are in place, there are no constitutional problems since there is no risk that facts decided by the jury (damages not subject to the cap) are disturbed.

Tudor's jury award is a constitutional quagmire. Tudor asked the jury for damages that are both subject and not subject to the cap. The jury returned an omnibus award that does not delineate the damages. Though in the abstract 42 U.S.C. §1981a's statutory cap *could* apply, since that cap only gives judges the power to remit certain damages but excepts others, there is likely some portion of the award (if not the whole thing) which constitutes uncapped damages. With an omnibus award, there is no way to tell. Therein lies the constitutional problem: any attempt by the Court to label the omnibus award let alone apportion it inherently "reexamines" the whole, which is comprised of "facts" resolved by the jury, in direct contravention of the Reexamination Clause. In this situation, any action by the Court to remit the award purely premised on applying §1981a's cap risks violating the Seventh Amendment.

Defendants' showing in support of their proposal falls woefully short of what is necessary to justify risking an impingement on the important constitutional rights at stake. Defendants' main argument is that if the Court does not recalculate damages anew, there is no way to apply the cap. But Defendants' desire to invoke the cap is not a substantial enough interest to warrant casting the Seventh Amendment into the proverbial ash heap. The cap is a defense that Defendants invoked far past the time required by Fed.R.Civ.P. 8(c) and, inexplicably, they further delayed formally raising it until long after the jury's award was issued. The totally self-inflicted harms

resulting from denying Defendants application of the cap at this juncture do not merit risking infringement of Tudor's Seventh Amendment rights. *Galloway v. United States*, 319 U.S. 372, 1095–96 (1943) (Black, J.) (dissenting) ("The call for the true application of the Seventh Amendment is not to words, but to the spirit of honest desire to see that Constitutional right preserved."); *Bland v. Burlington N. R. Co.*, 811 F.Supp. 571, 576 (D.Colo. 1992) (declining to find "defendants have a vested right in limiting the remedies recoverable by plaintiffs harmed by discrimination").

Defendants' other argument, that they do not agree that the sum of Tudor's uncapped and capped damages should amount to $1,165,000 is similarly infirm. The Seventh Amendment vests the jury, not the parties and not the Court, with the power to adduce damages in this case. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 354–55 (1998) (right to jury includes right to have jury determine amount of damages). So long as there is some basis on which the jury could return an award of this size, the award cannot be disturbed. *Bennett v. Longacre*, 774 F.2d 1024, 1028 (10th Cir. 1985) ("the amount of damages awarded by a jury can be supported by any competent evidence tending to sustain it"). Therein lies Defendants' problem.

Defendants cannot show the award overcompensates Tudor for the illicit deprivation of her tenured job, let alone her other injuries. In truth, Defendants gambled the jury would return a sub $1M award—the least they

projected to pay Tudor through salary and benefits if she were not illicitly denied the tenured job in the first place. *See, e.g.*, ECF No. 265 at 675–76 (McMillan: $1M to $2M range); ECF No. 266 at 767–78 (Snowden: $2M to $5M range). They also passed up opportunities to settle before the verdict's issue for what must now seem like a bargain—giving Tudor back her tenured job, a private apology, and a modest sum of restitution. *See* ECF No. 246 at 130:2–3 (Tudor: "[T]his is not about the money. I just want my job back."). Defendants rolled the dice and lost. The Seventh Amendment cannot give way simply because Defendants' bet did not pan out.

### D. Award Cannot Be Remitted Below Maximum

In the event the Court identifies an alternative means to apportion the jury's award that does not sow a Seventh Amendment violation, the total award should not be less than $300,000 (the maximum of capped damages) plus the sum of all uncapped damages awarded by the jury and any equitable compensation awarded by the court. When a court applies a statutory cap to a jury's award, it cannot simply toss aside the jury's award and craft a new award—the maximum of what the jury deemed appropriate must be given. *Deters*, 202 F.3d at 1273 (Title VII's "statutory cap is not the limit of a damages spectrum, within which the judge might recalibrate the award given by the jury."). Defendants' request that the Court remit below the cap's maximum on the premise that their wrongdoing could have been more egregious is foreclosed

by precedent. *Id.* (cap cannot be treated as a "statutory maximum . . . reserved for the most severe conduct").

## II. REMITTITUR OTHERWISE INAPPROPRIATE

### A. Environmental claim does not support remittitur.

Defendants' argument that the Court should remit the jury's award because Tudor did not prevail on her environmental claim fails on its face. Defendants premise their request on the assumption that the jury either erroneously awarded Tudor damages on the environmental claim or, because there are common facts between the environmental claim and the other claims, damages should be discounted. Those premises are faulty and the conclusions Defendants urge are foreclosed by precedent.

The jury instructions in this case made absolutely clear that Tudor could only be awarded damages for claims on which she prevailed.[5] It would be error to presume the jury did not understand those instructions let alone did not follow them. *Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.*, 571 F.2d 1144, 1149 (10th Cir. 1978) ("Appellate courts do note impute to a jury the inability to understand correctly the totality of the trial court's instructions,

---

[5] *See, e.g.,* Instruction No. 13, ECF No. 258 at 23 ("If you should find that Plaintiff is entitled to an award of damages on one or more of her Title VII claims, you may award her only such damages as you find will reasonably compensate her for the losses and injuries which you find, that she sustained as a result of Defendants' unlawful conduct. You may not award damages on Plaintiff's separate claims in a manner, which results in a double or multiple recovery for the same harm"); Instruction No. 15, *id.* at 26 ("Back pay damages may be awarded to compensate for the economic injuries or losses sustained as a result of Defendants' unlawful conduct.").

even in a complicated case, nor will courts impute nonfeasance, in the form of disregard of the trial court's instruction.") (*citing United States v. Smaldone*, 485 F.2d 1333 (10th Cir. 1973)).

Defendants' request to discount the jury award because Tudor's successful claims have some overlapping facts with the environmental claim is equally unsupported and legally infirm. There is no case supporting Defendants' position. Moreover, Defendants are not the prevailing party for the purpose of assigning burdens and presumptions at this stage. Where an employee prevails on all her claims save for an environmental claim which shares facts substantially subsumed within other successful claims, the employee is considered the prevailing party for the purposes of post-verdict motions. *See, e.g., Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1111 (10th Cir. 1998) (*citing Ramos v. Lamm*, 713 F.2d 546, 556 (10th Cir. 1983)).

### B. No "treating physician" requirement.

Defendants' argument that the jury's award should be remitted because a treating physician did not corroborate injuries fails on its face because there is no such requirement in Title VII cases. *See, e.g., Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1417 (10th Cir. 1997) (testimony of treating physician is "one suggested method of proving emotional damages but is not the sole dispositive requirement" but "absence of testimony by a treating

physician does not necessarily mean her claim is devoid of substantial evidence").

Even if a treating physician rule existed, it would not apply to this case. Tudor does not seek emotional distress damages (ECF No. 121 at 2–3 [Order recognizing same]). Moreover, the jury's omnibus award compensates Tudor for a broad swath of injuries—backpay, lost income, loss of fringe benefits, humiliation, loss of enjoyment of life, damage to professional reputation, mental anguish, emotional pain and suffering, and other non-pecuniary losses (Compl., ECF No. 24 at 34; Instructions, ECF No. 257 at 24–26)—that need not (and many of which could not) be substantiated by testimony from a treating physician. Lastly, Defendants' election to not supply a verdict form that delineates kinds of damages deprives them of the right to inquire as to what kinds of damages were awarded (see argument *supra* Part I-B). Thus, Defendants cannot speculate as to what portion of the jury's award compensates, let alone insist the whole award be deemed to compensate, emotional distress.

## C. Award is neither excessive nor shocks the conscience.

Jury awards are presumptively inviable. *Malandris v. Merrill Lunch*, 703 F.2d 1152, 1168 (10th Cir. 1981) (*en banc*). To win remittitur Defendants must show that the jury's award is "so excessive as to shock the judicial conscience and raise an irresistible inference that passion, prejudice,

corruption or other improper cause invaded the trial." *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1075 (10th Cir. 1998) (*citing Fitzgerald v. Mountain States Tel. & Tel. Co.*, 68 F.3d 1257, 1261 (10th Cir. 1995)). Defendants fail to carry that hefty burden.

### *Award falls within range of economic injury as defined by Defendants.*

Tudor's jury award should not be remitted because there is plainly substantial evidence in support. A jury award should not be remitted for excessiveness when it falls within the range of money necessary to compensate proven injuries. *See, e.g., Russo v. Ballard Med. Products*, 550 F.3d 1004, 1018 (10th Cir. 2008) ("When the damages awarded by the jury fall within the range permitted by the evidence admitted at trial . . . we may not second guess the award."); *Hudson v. Smith*, 618 F.2d 642, 646 (10th Cir. 1980) ("A jury's verdict regarding the amount of damages should be upheld unless it is clearly erroneous, or there is no evidence to support it.").

At trial, Defendants own witnesses testified that the tenured job Tudor was illicitly denied was worth a considerable sum of money. Dr. McMillan testified the job was worth between $1M to $2M dollars and Dr. Snowden proclaimed it was valued somewhere between $3M and $5M.[6] Defendants'

---

[6] ECF No. 265 at 675–76 (McMillan testimony); ECF No. 265 (Snowden testimony).

testimony anchored that of Tudor and her witnesses.[7] The jury's award falls squarely within the range of damages Defendants' witnesses gave to the jury, showing it is properly substantiated. (Of course, evidence speaking to Tudor's other injuries was also presented to the jury and further buttresses the award.[8])

*Other cases not similar.* Defendants' contention that damages awards approved by other courts set the ceiling for damages in this case totally lacks merit. The Tenth Circuit does not, as a rule, use the comparator method to determine excessiveness. Indeed, *McInerney v. United Air Lines, Inc.*, expressly disavows the comparator method in the Title VII context, clarifying that proper excessiveness inquiries focus on assessments of whether the specific facts, injuries, and evidence proffered at trial substantiate an award and reiterates that "comparisons with other cases are not dispositive." 463 Fed.Appx. 709, 723 (10th Cir. 2011) (collecting cases and *quoting Wulf v. City of Wichita*, 883 F.2d 842, 874–75 (10th Cir. 1989)).

---

[7] *See, e.g.*, ECF No. 246 at 120–21 (Tudor: loss salary, fringe benefits, and retirement), 123–24 (Tudor: period of unemployment and related financial and emotional strain as well as health problems); ECF No. 263 at 329–30 (Cotter-Lynch: economic value of tenured professorship).

[8] For example: Tudor testified extensively about her injuries. *See, e.g.*, ECF No. 246 at 61–62 (shock and fright in Feb. 2010); 68 (fear in April 2010); 81–82 ("hurt" in August 2010); 120–28 (financial ruin, loss of benefits, emotional toll, harm to professional reputation, humiliation, anxiety, depression, loss of home). Cotter-Lynch testified extensively on the same. *See, e.g.*, ECF No. 263 at 334–38 (effects of discrimination and retaliation on Tudor). Parker and others corroborated damage to reputation. *See, e.g.*, ECF No. 263 at 218–20 (Parker identifying tenure as key milestone of professor's career and identifying specific career and professional advantages concomitant).

Even if comparator cases should be taken into account, the cases cited by Defendants are not true comparators. All of the cases Defendants point to interrogate excessiveness in the context of free-standing emotional distress awards.[9] This case is distinguishable because Tudor did not seek emotional distress damages and there otherwise is no free-standing emotional distress award at issue—only an omnibus award for other kinds of damages (see argument *supra* Part II-B).

The cases Defendants point to are also substantively different in kind. Many do not involve employment discrimination.[10] The few employment cases cited are distinguishable because they involve totally different claims, injuries,

---

[9] *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408 (10th Cir. 1997) ($200,000 emotional distress award not excessive); *Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir. 1989) ($250,000 emotional distress award is excessive but leaving in place $210,177 in front pay and $242.465.95 of backpay, loss of use of income, and taxes); *Malandris v. Merrill Lynch*, 703 F.2d 1152 (10th Cir. 1981) ($1,000,000 emotional distress award not excessive); *United States ex rel Macias v. Pac. Health Corp.*, 2016 WL 8722639 (C.D.Cal. Oct. 7, 2016) (reasoning demand for $500,000 emotional distress damages too high in *qui tam* case because plaintiff did not suffer "dire financial constraints" and observing sex discrimination cases should have higher awards "because of their personal and highly offensive nature" but nonetheless awarding $1,042,673.63 of the $1,515,059 requested); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 180 (4th Cir. 2001) ($200,000 emotional distress award not excessive); *Selah v. Upadhyay*, 11 Fed.Appx. 241, 263 (4th Cir. 2001) ($150,000 emotional distress award for violation of First Amendment rights excessive where limited evidence corroborated harm); *Vadie v. Miss. State Univ.*, 218 F.3d 365, 377–78 (5th Cir. 2000) ($300,000 emotional distress award excessive because premised on two claims, one of which overturned); *Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*, 130 F.3d 349 (8th Cir. 1997) ($150,000 emotional distress award excessive); *Hetzel v. Cnty. of Prince William*, 89 F.3d 169 (4th Cir. 1996) ($500,000 emotional distress award excessive) *but see* 523 U.S. 208 (1998) (deeming manner in which remittitur ordered unconstitutional).

[10] *Wulf*, 883 F.2d 842 (§1983 free speech impingement by gov't employer); *Malandris*, 703 F.2d 1152 (common law fraud and intentional infliction of emotional distress); *Macias*, 2016 WL 8722639 (Federal Torts Claims Act *qui tam* action); *Selah v. Upadhyay*, 11 Fed.Appx. at 263 (§1983 free speech impingement by gov't employer).

types of workplaces, and involve persons in different fields.[11] Moreover, none involve a tenure denial and ejectment.

Several of Defendants' cases also are distinguishable because they turn on findings that the fact-finder was not presented with substantial evidence supporting injuries. For example, multiple cases indicate awards were lowered because more than a few lines of testimony discussing the injury at trial is necessary to substantiate damages[12]; a bar that Tudor plainly satisfies[13]. Other cases indicate that testimony from someone other than the plaintiff corroborating the injury is necessary[14]; a bar Tudor also satisfies[15].

Lastly, most of Defendants' cases are distinguishable for the plain fact that their findings of excessiveness are stale-dated. Excessiveness turns on an implicit finding that an award overcompensates, not the raw numeric. *McInerney*, 463 Fed.Appx. at 723 (totality of circumstances surrounding claim rather than numeric is key) (*citing Smith*, 129 F.3d at 1416)). It is axiomatic that a numeric deemed excessive two or more decades ago—the temporal range

---

[11] *Smith*, 129 F.3d at 1411 (Title VII sex-based hostile work environment claim brought by private sector accounts service representative); *Fox*, 247 F.3d at 180 (ADA hostile work environment claim brought by private sector auto-worker); *Vadie*, 218 F.3d at 378 (Title VII retaliatory failure-to-hire claim by public-sector professor); *Delph*, 140 F.3d at 357 (Title VII constructive termination claim); *Hetzel*, 89 F.3d at 170 (Title VII and §1983 retaliation claims brought by police officer).

[12] *Delph*, 130 F.3d at 357 (only testimony at trial substantiating injury "vague and ill-defined"); *Hetzel*, 89 F.3d at 171 (characterizing emotional distress evidence as insufficient because it was "exclusively of Hertzel's own brief, conclusory statements").

[13] *See, e.g.,* testimony cited *supra* notes 6, 7, and 8.

[14] *Selah*, 11 Fed.Appx. at 263 (more than just plaintiff's testimony necessary); *Hetzel*, 89 F.3d at 171 (more than plaintiff's brief and conclusory testimony necessary).

[15] *See, e.g.,* testimony cited *supra* notes 6, 7, and 8.

within which most of Defendants' cases fall—may very well not be excessive today given the effects of inflation and passage of time.

*Jury's award is not punitive.* Defendants' bare speculation that Tudor's damages could have been differently calculated is not grounds to deem the award impermissibly punitive. *Thompson v. Kerr-McGee Refining Corp.*, 660 F.2d 1380, 1388 (10th Cir. 1981) ("When the cause and existence of damages have been established with the requisite certainty, recovery will not be denied because of the amount of such damage is difficult of ascertainment. A reasonable basis for computation and the best evidence available under the circumstances is sufficient."). Moreover, there are indicia that the jury's award is not punitive. For example, it falls squarely within the $1M to $5M valuation presented by Defendants to the jury at trial. *See* ECF No. 265 at 675–76 (McMillan testimony); ECF No. 266 at 767–68 (Snowden testimony). Additionally, Jury Note 1 (ECF No. 258), which posed probing questions about calculating backpay, reveals the jury was focused on carefully computing an award to salve Tudor's actual injuries rather than to punish.

## III. REMITTING AWARD WILL NOT MAKE TUDOR WHOLE

Title VII commands that the Court look at the specific facts of this case and Tudor's present circumstances to ensure the final damages award entered, in combination with decisions on equitable relief like reinstatement and front

pay, make Tudor whole. Thus, the jury's award cannot be remitted below the

threshold at which Tudor whole.

Tudor is not currently whole. Defendants unlawfully discriminated and

retaliated against Tudor.[16] Ever since, they have endeavored to vilify Tudor,

cast blame on others, and otherwise sought to obfuscate the magnitude of the

injuries they caused.

The ugly and painful reality of what Tudor endured is that the

immediate effects continue to linger long after the first blow landed and, in

---

[16] Defendants imply that they plan to file a Rule 50(b) motion (ECF No. 289 at 6). Any such motion would be futile for two reasons. First, filing a 50(b) motion now would be wildly untimely and prejudicial to Tudor. At Defendants' request, the Court specially set the briefing schedule for 50(b) motions, with opening briefs due on December 11, 2017. *See* ECF No. 267 at 873–74. That deadline passed 185 days ago (as of May 24, 2018). After the deadline for 50(b) motions, Tudor made litigation decisions, including the filing of several post-verdict motions and tailoring her arguments therein in reliance on Defendants not filing a 50(b) motion.

Second, there are no viable grounds on which Defendants could premise a 50(b) motion since their 50(a) motion preserved nothing. At trial, Defendants proffered only an oral 50(a) motion on the record, arguing cryptically and without requisite specificity: "We believe the facts in evidence support a motion for directed verdict on each of plaintiff's claims" (ECF No. 266, 724:18–25). This preserves nothing. A 50(a) motion must "specify the judgment sought and the law and facts on which the moving party is entitled to judgment." Fed.R.Civ.P. 50(a)(2). "Only questions raised in a prior motion for directed verdict may be pursued in a motion for judgment notwithstanding the verdict." *Perry v. Amtrak*, 2013 WL 12071665 at *4 (W.D.Okla. 2013) (*quoting Dow v. Chemical Corp. v. Weevil-Cide Co., Inc.*, 897 F.2d 481, 486 (10th Cir. 1990)). "A party may not circumvent 50(a) by raising for the first time in a post-trial motion issues not raised in an earlier motion for directed verdict." *United Inter. Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1228 (10th Cir. 2000). The "specific grounds" requirement of 50(a) demands that a party must identify issues with specificity to preserve them for 50(b) purposes. "Merely moving for directed verdict is not sufficient to preserve any and all issues that could have been, but were not raised in the directed verdict motion." *Id.* at 1229.

Defendants' 50(a) motion did not identify any, and thus failed to preserve, legal issues for a subsequent 50(b) motion, even those arguments Defendants previously raised at summary judgment. *Wolfgang v. Mid-Am. Motorsports*, 111 F.3d 1515, 1521–22 (10th Cir. 1997). Though Defendants' 50(a) motion proffered that "facts in evidence" supported a verdict in their favor, that statement is so cryptic and vague that it fails the "specific grounds" test. To wit, Defendants did not identify which "facts in evidence" supported their position or explain how construed such facts entitled them to judgment. Defendants cannot use such a vague statement to buttress a 50(b) motion since it does not apprise Tudor or the Court of the "specific grounds" purportedly entitling them to a directed verdict. *See Wharf*, 210 F.3d at 1229.

fact, snowballed over time. Tudor's life unraveled when she was illegally denied tenure and ejected from Southeastern. There was no way for her to get immediate tenure elsewhere, and she could not otherwise secure a comparable job. She was forced to take a very different job at Collin College that was equal parts less lucrative, prestigious, fulfilling, and secure (ECF No. 279-3 at 7 n.1). Tudor lost the Collin job in 2016 in the midst of prosecuting this case.[17] Tudor diligently searched for other jobs after she left Southeastern, throughout her time at Collin, and continues to look for jobs in her field today despite the fact that her search is utterly futile.

The predictable and pernicious effects of Defendants' Title VII violations continue to reverberate in Tudor's life today. Tudor is unemployed, despite holding a PhD from the University of Oklahoma, an impressive credential. She has taken pains to mitigate damages, having applied to hundreds of jobs in her field prior to trial and continuing that search at full-speed post-trial with no luck (ECF No. 279-3 ¶¶ 3–4). Tudor has no hope of a tenured university professorship absent reinstatement (ECF No. 279 at 10–11 [argument and

---

[17] Tudor was pushed out of Collin College by Dean Weasenforth in retaliation for filing a legitimate complaint against him. Tudor has proffered sworn testimony in support of her account as well as credible documentary evidence (see, e.g., ECF No. 271-1 ¶ 3(c)). Defendants did not create a disputed issue of fact because they refuse to proffer any testimony from Weasenforth in support, despite previously representing his testimony is necessary on this issue (*see, e.g.*, ECF No. 213 at 5). If the Court nevertheless finds the circumstances of Tudor's separation from Collin are legitimately disputed by the parties, the Seventh Amendment requires that a trial on this issue be convened. *Dolene v. Flynn*, 628 F.2d 1280, 1282 (10th Cir. 1980) ("trial by affidavits is procedurally impermissible where crucial disputed issues of fact exist").

corroborating evidence]). Starting over in a totally new career is not a realistic option (ECF No. 279-3 ¶ 4(d)(i)).

Tudor's precipitous career spiral since Southeastern illicitly denied her tenure is not her fault—it is the predictable and direct result of Defendants' illicit acts. These are the truly undisputed facts: But for Defendants' discrimination and retaliation, they would have granted Tudor life tenure at Southeastern (ECF No. 262 [verdict]) and would neither have just cause nor would seek to remove her from that position (ECF No. 284 at 20 [admission by counsel]). Defendants knew denying Tudor tenure would "deny her career" (ECF No. 246 at 29:3–4 [admission of counsel]) and, as a result of their actions "she has no career today" (*id.* at 30:8–11 [same]). Tudor was and is a good teacher—before she prevailed at trial Southeastern never suggested otherwise (ECF No. 276 at 8–10 [discussing evidence]). Tudor is a productive scholar— she has more published peer review articles than any current Southeastern English professor and has published new articles since trial (see, e.g., ECF No. 282-1 [article]). Tudor has done an incredible service to Southeastern by prosecuting this case—among other things, university policies and practices have been changed for the better.

Tudor has pulled up her bootstraps as far as they go and otherwise done everything Title VII requires to warrant full make whole relief. The Court must take a hard look at all relief Tudor requests, including the pending

reconsideration motion (ECF No. 288), and enter a final award commensurate with Tudor's injuries and needs. Defendants told the jury Tudor's tenured job was worth anywhere between $1M to $5M. The jury awarded Tudor damages in the lower end of that threshold.

Under these circumstances, it would be resoundingly unjust for Tudor to not be reinstated or alternatively given substantial front pay for her remaining work life expectancy. Most assuredly, it would be reversible error to remit the jury's award since that would drop Tudor's damages far below the threshold Defendants admit is necessary to make Tudor whole. *See Carter v. Sedgwick Cnt., Kan.*, 36 F.3d 952, 957 (10th Cir. 1994) (award must "compensate a victim for the continuing future effects of discrimination until the victim can be made whole") (cleaned up); *EEOC v. Prudential Fed. Sav. And Loan Ass'n*, 763 F.2d 1166, 1173 (10th Cir. 1985) ("employee should be returned as nearly as possible to the economic situation [s]he would have enjoyed but for defendant's illegal conduct").

## CONCLUSION

Tudor explained at trial that this case is about "fairness and justice" not vengeance (ECF No. 246 at 39:5–6). In that vein, she does not ask for Defendants to be punished or vilified for what they did. Instead, Tudor humbly and sincerely asks that the Court award the full measure of relief necessary to make her whole. For all of the foregoing reasons, Tudor requests that the Court

not remit the jury's award and otherwise enter judgment with damages for her in the full amount of the jury award plus the amount of front-pay properly due in light of the issues raised in the pending reconsideration motion (ECF No. 288).

Dated:      May 24, 2018

/s/ Ezra Young
Ezra Young (NY Bar No. 5283114)
Law Office of Ezra Young
30 Devoe, 1a
Brooklyn, NY 11211
P: 949-291-3185
F: 917-398-1849
ezraiyoung@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2018, I electronically filed a copy of the foregoing with the Clerk of Court by using the CM/ECF system, which will automatically serve all counsel of record.

/s/ Ezra Young
Ezra Young (NY Bar No. 5283114)