IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DR. RACHEL TUDOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Case No. CIV-15-324-C |
| ) | |
| SOUTHEASTERN OKLAHOMA ) | |
| STATE UNIVERSITY and ) | |
| THE REGIONAL UNIVERSITY ) | |
| SYSTEM OF OKLAHOMA, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF MOTION OF
LAW OFFICE OF JILLIAN T. WEISS FOR ATTORNEYS' FEES AND COSTS**

Pursuant to Fed. R. Civ. P. 54(d), Plaintiff's former attorney, Law Office of Jillian T. Weiss, P.C., and its Principal, Jillian T. Weiss, hereby request an award of attorneys' fees and costs as authorized by 42 U.S.C. § 1981a. The amounts requested are as follows:

For the Law Office of Jillian T. Weiss, P.C., attorney fees in the amount of $211,325.00 and costs totaling $10,219.52, as supported by the declarations and time/expense records attached as Exhibits A, B and C;

**I.  PROCEDURAL HISTORY**

Plaintiff Rachel Tudor approached attorney Dr. Jillian T. Weiss in 2014 to request representation in prosecuting an action against Defendants Southeastern Oklahoma State University (SEOSU) after she had successfully pursued a claim through the United States Equal Opportunity Commission against Defendant SEOSU. Weiss was, at that time, a tenured Full Professor of Law and Society at Ramapo College of New Jersey. She had been a lawyer since 1986, although she ceased the active practice of law as full-time profession in 1998. She had resumed the active practice of law in

2011, while still employed at Ramapo College. By 2014, she had represented several transgender and gender non-conforming persons who had experienced employment discrimination in cases around the country. Dr. Weiss agreed to represent Dr. Tudor. As part of the representation, Dr. Weiss negotiated with the United States Department of Justice (DOJ) on behalf of Dr. Tudor to advocate that DOJ litigate this matter on behalf of Dr. Tudor. At that time, DOJ had never before litigated an employment case on behalf of a transgender person. In addition, DOJ had previously taken the position that Title VII did not provide protection against sex discrimination to transgender people. Due in part to Dr. Weiss' advocacy of Dr. Tudor's case to DOJ, as well as the advocacy of many others within and without DOJ committed to transgender civil rights, DOJ reversed its long-standing position, and put in place a new policy position that Title VII did provide protection against sex discrimination to transgender people. DOJ brought this action on behalf of the United States of America to vindicate Dr. Tudor's rights, a milestone in transgender civil rights advocacy.

Dr. Weiss filed a Complaint in Intervention on behalf of Dr. Tudor against the Defendants. The Complaint in Intervention reflected both different language and additional claims that protected important rights and interests of Dr. Tudor. Defendants filed a motion to dismiss the additional count of the Complaint in Intervention, the count addressing the hostile work environment experienced by Dr. Tudor. In ruling on the motion, the Court made a ruling that was unprecedented and key to the success of Plaintiff, that she was protected from sex discrimination by Title VII, despite the Tenth Circuit precedent that Defendants argued precluded protection of Dr. Tudor from sex discrimination.

After the Motion to Dismiss was denied, Plaintiff engaged in discovery, including X pages of documentary discovery and Y depositions. In July 2016, the case was transferred to the Transgender Legal Defense and Education Fund, Inc. (TLDEF), a New York City-based nonprofit organization, which Dr. Weiss had joined as Executive Director, and where she hired attorney Ezra Young, formerly an associate with the Law Office of Jillian T. Weiss, P.C., to be Director of Litigation. The case was

then transferred to Mr. Young's law office after he departed TLDEF. Mr. Young's brilliant advocacy defeated Defendants' motion for summary judgment and resulted in a $1.165 million verdict in favor of Plaintiff. While the amount awarded was reduced on motion, this verdict stands as a shining example of Oklahoma justice in service of the liberty and civil rights for which Americans have fought and died.

### II.  APPLICABLE STANDARD

The Civil Rights Act of 1964 provides for attorney fees to a prevailing plaintiff, as follows:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e-5(k). Congress enacted this section to encourage private litigation of civil rights claims. "When a plaintiff succeeds in remedying a civil rights violation . . . he serves 'as a "private attorney general," vindicating a policy that Congress considered of the highest priority.'" *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011) (quoting *Newman v. Piggie Park Ent., Inc.*, 390 U.S. 400, 402 (1968) (per curiam)). Because such litigation advances important civil rights, a prevailing plaintiff "'should ordinarily recover an attorney's fee' from the defendant." *Id.* (citation omitted). Awarding attorney's fees to prevailing civil rights plaintiffs "at once reimburses a plaintiff for 'what it cos[t] [him] to vindicate [civil] rights,' and holds to account 'a violator of federal law.'" *Id.* (citations omitted).

### III.  PLAINTIFFS ARE THE PREVAILING PARTY

A prevailing party is one that succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (citation omitted). It should be noted that Plaintiffs did not have to prevail on *all* of their claims to be entitled to an award of attorney's fees. *See Berger v. City of Mayfield Heights*, 265 F.3d 399 (6th Cir. 2001) (plaintiff held to be the prevailing party even though 12 of his 14 claims were dismissed); *Owner-Operator Indep. Driver Assn, Inc. v. Vissell*, 210 F.3d 595, 597 (6th Cir. 2000) (holding that

"[a]ny enforceable judgment of comparable type of relief or settlement . . . will generally make a plaintiff a 'prevailing party.'"). But, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

In this case, Plaintiff prevailed on her claim for sex discrimination, and received relief for her lost backpay, front pay and noneconomic damages. This case will also have a profound effect on the rights of transgender people to be free of sex discrimination in the Western District of Oklahoma and others jurisdictions well into the future.

## IV. THE FEES REQUESTED BY PLAINTIFFS ARE REASONABLE

The lodestar approach is the approved method for to determining reasonable attorneys' fees. *See Hensley,* 461 U.S. at 433-37. The lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir. 1996). A fee determined by this "lodestar method" is entitled to a "strong presumption" that it "represents the 'reasonable' fee." *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992); *see also Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010).

A summary of the hours expended and claimed here for the Law Office of Jillian T. Weiss, by attorney, is represented in the table below.

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Jillian T. Weiss | 436.50 | $300 | $130,950.00 |
| Ezra I. Young | 321.5 | $250 | $80,375.00 |

In addition to the basic lodestar calculation, courts consider the following factors in awarding fees: the novelty and complexity of the issues; the special skill and experience of counsel; the quality of representation; the results obtained; and the contingent nature of the fee agreement. *Morales,* 96 F.3d at

364. The hours and requested rates are reasonable and should be awarded by the Court.

### A. The Total Number of Hours is Reasonable

Taking all appropriate factors into consideration, the time expended to achieve the results in this case was reasonable. Work was clearly divided between the attorneys, each taking specific responsibilities for the tasks at hand. The attorneys carefully edited all briefs, resulting in high-quality legal memoranda that clearly and succinctly identified the novel issues to be decided by the Court, and managed a group of twelve clients and their children who were originally split into two different cases. In addition, the coordination of effort among the four legal teams before the Supreme Court was both unusual and necessary to effective representation on an issue of national importance. To be sure, a lot of time was required, but the numbers reflected in this Motion are not unreasonable.

The complexity of the case and the sheer amount of work required to properly litigate it necessitated multiple attorneys. Using multiple lawyers in a case "is a common practice, primarily because it results in a more efficient distribution of work. It allows more experienced, accomplished, and expensive attorneys to handle more complicated matters and less experienced, accomplished, and expensive counsel to handle less complicated ones." *Gautreaux v. Chicago Hsg. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007). The method contemplated by *Gautreaux* is precisely the method by which Plaintiffs have litigated this case all along, as reflected by the billing records attached hereto.

To the extent that there is overlap in the hours expended by counsel, it was only as absolutely necessary. Courts have approved so-called "duplicative" billing, where two attorneys are billing for the same telephone conversation or meeting. The practice of law often (indeed usually) involves significant periods of consultation among counsel. In this case, those efforts were critical in creating cohesive arguments, strategizing novel legal theories, and assessing the implications of various positions. Talking through a set of authorities or seeking advice on a vexing problem is often significantly more

efficient than one attorney's attempt to wade through the issue alone. *Tchemkou v. Mukasey*, 517 F.3d 506, 511-12 (7th Cir. 2008). It is significant to note that the Oklahoma Attorney General had than several attorneys who worked on this matter. Each deposition was attended by two or more attorneys on behalf of the Oklahoma Attorney General. It is not unreasonable to permit the plaintiff to bring two attorneys to a deposition when the Oklahoma Attorney General routinely did so as well.

**B. The Requested Rates Are Reasonable**

    1.    Local Counsel's Rates

As set forth in the attached declarations, the rates charged by lawyers of the Law Office of Jillian T. Weiss are reasonable for attorneys in the Oklahoma market. The Supreme Court has repeatedly noted the Congressional intent that "the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases . . . ." *Blum v. Stenson,* 465 U.S. 886, 893 (1984) (quoting S.Rep't No. 94-1011 at 6, 1976 U.S.C.C.A.N. 5908, 5913); *see also Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989).

The rates, which top out at $300 per hour, are more than reasonable within the Western District of Oklahoma, which has validated these rates in previous cases. CONCLUSION

In conclusion, Plaintiffs respectfully request a fee award in the amount of $211,325.00.

                                              Respectfully submitted,

                                              s/Jillian T. Weiss
                                              JILLIAN T. WEISS
                                              527 Hudson Street
                                              P.O. Box 20169
                                              New York, New York 10014
                                              *Former Counsel for Plaintiff-Intervenor Dr. Rachel Tudor*

**CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of the foregoing was this 20th day of June, 2018, delivered via the CM/ECF system to all parties of record.

                                              s/Jillian T. Weiss
                                              JILLIAN T. WEISS